*407 OPINION OF THE COURT

Per Curiam.

 These appeals concern challenges that the under-representation of Hispanics in the Kings County Grand Jury pool denied defendants their rights to due process and equal protection. Inasmuch as there was no proof, on this record, of systematic exclusion of Hispanics or of intentional discrimination, defendants’ motions to dismiss their respective indictments were properly denied.
x
Defendants were independently convicted of unrelated crimes committed in Kings County. Prior to their respective trials, defendants each moved to dismiss his indictment on the ground that Hispanics were unlawfully underrepresented in the Grand Jury pool in Kings County, as a result of discrimination in the selection process of potential jurors. Both defendants asserted violations of their statutory right to a Grand Jury selected from a fair cross section of the community (see Judiciary Law, § 500). In addition, each raised constitutional arguments. Defendant Guzman, an Hispanic, argued that the discrimination violated his right to equal protection. Defendant Wells, a Black, argued that this underrepresentation of Hispanics in violation of equal protection violated his right to due process.
In Kings County, the selection process for jury service begins with a random computer selection of a predetermined number of prospective jurors who are mailed subpoenas, in race-blind notices, requiring them to report to the commissioner for an examination regarding their qualifications for jury service. There is an attempt to follow-up on summonses returned because of a wrong address. When a recipient answers the subpoena, he or she is given a questionnaire, requesting such information as residence, date of birth, marital status, extent of education, number and age of children, and prior convictions (see Judiciary Law, § 513). An oral examination of the applicant is then conducted to determine the veracity of the responses. Those persons whose answers indicate that they are not qualified under the criteria set forth in sections 510 and 511 of the Judiciary Law are rejected. The reason for *408 rejection — e.g., foreign citizenship, age, prior felony conviction, lack of good character, inability to read and write English with a sufficient degree of proficiency, or inability to speak English in an understandable manner (see Judiciary Law, § 510) — is noted on the questionnaire. Qualified persons are then fingerprinted (see Judiciary Law, § 514) on cards that do not include any information as to race or color. These qualified prospective jurors are then added to the master pool of grand and petit jurors. Names for the Grand Jury pool are drawn therefrom and placed in a sealed drum, from which names are removed in the ensuing year as required.
Guzman and the prosecutor stipulated, with the court’s approval, that they would rely on the minutes of the record in the then pending case of People v Best (Kings County, Ind No. 869/1978), which had raised an identical charge of intentional, substantial underrepresentation of Hispanics in the Grand Jury pool of Kings County.[1] Wells’s motion requested a hearing or, in the alternative, that the court adopt the record.in Best. The request for a hearing de novo was denied.
The motion challenging the Grand Jury pool in People v Best was denied. Likewise, the defendants’ motions were summarily denied by Supreme Court. The Appellate Division affirmed in both cases. In Guzman, the court held that the defendant had suffered no violation of his right to equal protection because the People adequately rebutted the presumption of intentional discrimination. Nor did the court find any violation of due process or of defendant’s statutory right under section 500 of the Judiciary Law, reasoning that the jury was drawn from a fair cross section of the community because there was no proof of systematic exclusion of Hispanics from the Grand Jury pool. The Appellate Division affirmed in Wells, relying on the reasons set forth in People v Guzman.
The questions presented here are whether the underrepresentation of Hispanics in the Kings County Grand Jury pool was caused by the systematic exclusion of Hispanics in *409 violation of defendant Wells’s right to due process or by intentional discrimination in violation of Guzman’s right to equal protection. This court now affirms.
On appeal, defendants no longer argue that their statutory right to a Grand Jury drawn from a fair cross section of the community was violated (see Judiciary Law, § 500). Thus, these claims are not addressed. As to the constitutional claims, each defendant has the initial burden of establishing a prima facie case. If this condition is satisfied, the burden of proof shifts to the People to rebut the claim of unconstitutionality. Inasmuch as the elements of a prima facie case differ under due process and equal protection analyses, defendants’ claims are discussed separately.
JL
The due process clause of the Fourteenth Amendment protects a defendant from “indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States” (Peters v Kiff, 407 US 493, 502). Any person may challenge the exclusion of “any distinct group” from Grand Jury service because regardless of a person’s race, he or she “has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law” {id., at p 504).[2] “[T]he exclusion of a discernible class from jury service injures not only those defendants who belong to the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross section of the community” (id., at p 500).[3]
*410 In order to establish a violation of due process based on the absence of a fair cross section of the community in the jury pool, a defendant must demonstrate that a substantial and identifiable segment of the community was not included in the Grand Jury pool because the process used to select grand jurors “systematically excluded” that group from service (Peters v Kiff, 407 US 493, 503-504, supra; see Duren v Missouri, 439 US 357, 364). Once defendant has made this prima facie showing, the State “bears the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest” (Duren v Missouri, supra, at p 368; see Peters v Kiff, supra, at p 500, n 10). To justify the exclusion, the State interest must be “manifestly and primarily advanced by those aspects of the jury-selection process, such as exemption criteria, that result in the disproportionate exclusion of a distinctive group” (Duren v Missouri, supra, at pp 367-368).
The People do not controvert that Hispanics are a substantial and identifiable group in the community of Kings County. In addition, the People do not dispute and the evidence bears out that the number of Hispanics in the Grand Jury pool is not “reasonably representative” of the number of Hispanics in the community (see Duren v Missouri, 439 US 357, 364, supra). Thus, defendant Wells established the first part of his claim.
But, in order for defendant to have completed his prima facie case establishing a violation of due process, he must have further demonstrated that the underrepresentation was caused by the “systematic exclusion” of Hispanics in the jury selection process (see Peters v Kiff, 407 US 493, 500, 504-505, supra; People v Parks, 41 NY2d 36, 43; see, also, Duren v Missouri, 439 US 357, 366, supra; Taylor v Louisiana, 419 US 522, 531-533). This has been inter *411 preted to mean that the challenge to the jury selection process must show that the exclusion of a particular group is “inherent in the particular jury-selection process utilized” (Duren v Missouri, 439 US 357, 366, supra).
The record does not reflect that the underrepresentation of Hispanics was caused by any aspect of the selection process, so as to amount to “systematic exclusion.” Two points in the procedure were identified as the times at which the number of Hispanics decreased significantly: after receipt of the qualification subpoenas, and during the qualification interviews. There was, however, nothing about these procedures that caused the particular exclusion of Hispanics. All jurors were summoned by the mailed subpoenas, which were sent to Hispanics in proportion to their percentage in the population. No different response procedures were established for Hispanics as compared to any other group or individuals; all were to report for an interview with the commissioner. The fact that a much lower percentage of Hispanics responded to the summonses was not caused by the system and cannot be considered an inherent defect in the process. Hispanics also were disqualified and exempted from service in a greater percentage than non-Hispanics. The reasons — English literacy difficulties and responsibility for children — for these actions would apply to any person regardless of his or her race, sex, or ethnicity (cf. Duren v Missouri, 439 US 357, supra [special exemption criteria and response rules applicable only to women]; Taylor v Louisiana, 419 US 522, supra [same]).
Thus, the disproportionately lower percentage of Hispanics present in the Grand Jury pool was not attributable to any aspect of the system itself. Defendant Wells did not demonstrate systematic exclusion, and thereby did not establish a prima facie case. His motion to dismiss the indictment was, therefore, properly denied.
Ill
It has long been recognized that “ ‘it is a denial of the equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury * * * from which all persons of his race or color have, solely because of that race or color, been excluded by the State’ ” *412 (Castaneda v Partida, 430 US 482, 492, quoting Hernandez v Texas, 347 US 475, 477). Substantial underrepresentation, in contrast to exclusion of a particular group, is also unconstitutional when it is caused by intentional discrimination {id., at p 493).
A prima facie case of an equal protection violation in the context of a Grand Jury selection is established by showing that the underrepresented group is a “recognizable, distinct class” who has received different treatment under the law. A substantial degree of underrepresentation “over a significant period of time” can be shown through statistical analysis of the disparities between the proportion of the group in the total population and the proportion of the group on the Grand Jury lists (id., at p 494). Moreover, a showing that the selection process is “susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing” (id.; see Rose v Mitchell, 443 US 545, 565). Therefore, unlike a due process challenge, a defendant may establish, a prima facie case without explicitly proving that the discrimination was caused by systematic exclusion (see Duren v Missouri, 439 US 357, 370-371, supra [Rehnquist, J., dissenting]).
To rebut this inference of discriminatory intent, the State has the burden of showing that the underrepresentation has been caused by nondiscriminatory factors or by permissible racially neutral selection criteria and procedures (Castaneda v Partida, supra, at pp 493-494; see Duren v Missouri, 439 US 357, 368, n 26, supra). Simple protestations that racial considerations play no part in the selection process will not constitute an adequate rebuttal (Castaneda v Partida, supra, at p 498, n 19). Nor may the State “rely on a presumption that the officials discharged their sworn duties to rebut the case of discrimination” {id.). Evidence detailing the procedures followed by the Commissioner of Jurors, however, setting forth such facts as the number of the underrepresented group who were not residents of the area, illiterate, not of good moral character, or prior felons, is probative of whether the underrepresentation of the particular group was unlawful.
(A)
On defendant Guzman’s appeal, as in Wells’s appeal, there is no dispute that Hispanics are a “recognizable, *413 distinct class, [which has been] singled out for different treatment under the laws” (Castaneda v Partida, 430 US 482, 494, supra), or that Hispanics have been substantially underrepresented in the Kings County jury pools for a significant period of time. In addition, it was established that there are subjective factors, such as rejection for failure to sufficiently comprehend English, that are injected into the selection system during the qualification interview process. The opportunity for such subjective judgments in the process established that it was “susceptible to abuse,” which supported the presumption of discrimination raised by the statistical showing of underrepresentation. Defendant thus established a prima facie case that his right to equal protection had been violated.
In rebuttal, the People established that the general procedure used in the selection process did not manifest any discriminatory intent on its face. Indeed, the defendant Guzman conceded this but argued that the discrimination occurs during the qualification interviews. The record, however, shows that, proportionately, only about half as many Hispanics as non-Hispanics responded to qualification summonses, which were sent out in proportion to the number of Hispanics in the general population of Kings County in 1978. Of those persons appearing, Hispanics were found to be qualified only about 75% as often as non-Hispanics. The majority of Hispanics who failed to qualify did so because of their inability to read, write and understand the English language with sufficient proficiency to complete the questionnaire. Most of the remainder were women exempted at their own request because they had the responsibility of caring for young children. Over the entire process from summons through qualification and placement in the pool, non-Hispanics were added to the pool at nearly three times the rate of Hispanics.
The record supports the conclusion that the underrepresentation of Hispanics was caused, in part, by their lower response rate to summonses, which cannot be considered a discriminatory factor in the selection process or in any way intentionally caused (cf. United States v Clifford, 640 F2d 150, 156). Nor is the underrepresentation that was caused *414 by lower English literacy and by requests for exemptions based upon responsibilities to young children at home, the result of intentional discrimination. These, too, are nondiscriminatory factors with respect to Hispanics. Nothing in the record suggests that these criteria were applied in a discriminatory fashion.
The affirmed findings of fact that the selection process in general is racially neutral, that Hispanics respond to qualification summonses at a lower rate than non-Hispanics, and that there is a higher incidence among Hispanics of English illiteracy and exemptions based on child-care needs, are supported by sufficient evidence (see People v Rizzo, 40 NY2d 425, 430). Given these facts, this court concludes that the People adequately established that the underrepresentation of Hispanics was not caused by intentional discrimination.
(B)
Defendant argues that Best was improperly denied discovery requests for fingerprint cards and questionnaires that provided the basis for the People’s evidence. It is asserted that this precluded Best from conducting effective cross-examination. This deprivation, it is argued, should have rendered a substantial part of the People’s testimony inadmissible and, thus, the rebuttal evidence insufficient.[4]
Section 509 of the Judiciary Law states that records of persons summoned for juror qualification are confidential and may not be disclosed except to the county jury board or as permitted by the Appellate Division (Judiciary Law, § 509, subd [a]). These confidential records contain many details (e.g., criminal record, occupation, home telephone, *415 extent of education, names and ages of children), of a juror’s private life. To guard against their unrestricted disclosure, a request for their discovery must present some factual predicate which would make it reasonably likely that the records would provide relevant evidence (see People v Gissendanner, 48 NY2d 543, 549-550).
Best was allowed to examine the lists of grand jurors for 1970 through 1978, from which he made his statistical analysis demonstrating underrepresentation of Hispanics. Best twice requested discovery of the fingerprint cards and the qualification questionnaires. When he made these requests, however, he gave no reason to believe that these records would turn up anything relevant other than to provide possible information with which to impeach the commissioner’s credibility during the People’s direct case. Best had been granted access to the individuals who conducted the interviews of the prospective jurors and thus had the opportunity to compare the commissioner’s testimony with that of others involved in the actual selection process. No interviewer was called by Best, nor did he allege any information gained from them in his discovery motion which might indicate that the questionnaire and fingerprint cards would contain information inconsistent with Durso’s testimony. “[NJothing better than conjecture having been presented to the court, it acted well within its range of discretion in rejecting the application” (People v Gissendanner, 48 NY2d 543, 550, supra).
On redirect, the commissioner testified by providing a summary of information obtained through a review of the questionnaires and other documents. Assuming that these new circumstances would have justified requiring the disclosure of the confidential materials to defendant, it is noted that this testimony was given after Best’s second request had been denied by the Appellate Division. Best’s third request was presented only to the trial court. Inasmuch as Best never renewed his request in the Appellate Division, the proper forum (see Judiciary Law, § 509), this issue is not preserved for review.
In sum, the People’s evidence adequately established that the underrepresentation of Hispanics in the Grand Jury pool was not caused by intentional discrimination. *416 Thus, Guzman’s motion to dismiss the indictment on the ground of a violation of his right to equal protection was properly denied.
IV
The defendants’ other arguments have been considered and are found to be without merit.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur in Per Curiam opinion.
In each case: Order affirmed.

. The hearing held for the motion to dismiss the indictment in People v Best covered 18 days of testimony over an eight-month period and the minutes of the hearing are contained in 13 volumes of transcript.

. The Appellate Division mischaracterized Wells’s argument as claiming only a violation of equal protection and held that Wells, as a black person, had no standing to raise an equal protection violation relating to Hispanics. On the same reasoning, the People continue to challenge Wells’s standing to raise an equal protection claim as to himself. However, as said defendant points out on appeal, his claim is only for a violation of his right to due process which is caused by the underrepresentation of Hispanics in violation of the equal protection clause. As the question of whether Wells would have standing to challenge the jury selection system as a violation of his own right to equal protection is not before us, we do not decide that issue and do not comment upon the correctness of the Appellate Division’s holding.

. The court in Peters v Kiff (407 US 493), analyzed the due process deprivation suffered by the defendant as the loss of the right to a Grand Jury drawn from a cross section of the community (id., at pp 500, 503-504). The right to a jury chosen from a fair cross section is also protected by the Sixth Amendment guarantee of an impartial jury trial in the context of a petit jury challenge (Duren v Missouri, 439 US 357, 359; Taylor v Louisiana, 419 US 522, 525-527; Peters v Kiff, 407 US 493, 500, supra; Duncan v *410 Louisiana, 391 US 145). The principles governing establishment of .a claim that a petit jury is not drawn from a fair cross section of the community in violation of the Sixth Amendment are the same for showing lack of a fair cross section in Grand Juries in violation of the due process clause (Peters v Kiff, 407 US 493,495-496, supra; see Duren v Missouri, 439 US 357, 358-359, supra; Taylor v Louisiana, 419 US 522, 528, 538, supra; People v Parks, 41 NY2d 36, 42-43). Thus, guidance from the cases dealing with fair cross-section claims with respect to petit jurors under the Sixth Amendment will be applicable in this instance of a fair cross-section challenge to a Grand Jury selection system under the due process clause.

. [3] There is no merit to the People’s argument that defendant lacks standing to litigate the correctness of the rulings on Best’s discovery motions. The parties here agreed to “incorporate the minutes of the hearing” into their motions and “rest on that.” There can be no reasonable doubt that the meaning of the “minutes of the hearing” or the “record” in the Best hearing would literally include any and all proceedings, including testimony of witnesses, objections to testimony by both sides, motions for discovery, or rulings or comments by the Judge. To hold otherwise would be to presume that defendant in effect waived any meaningful right to appeal by requesting the court to decide his own motion in reliance upon a record in which no errors had been preserved for review. It is highly unlikely that this was the intent or understanding of the parties. It was not necessary for defendant to personally repeat all desired objections and requests made by Best’s attorney, in effect to re-enact the proceeding of the Best hearing. The full record, as it stands from the Best hearing, was made a part of defendant’s own motion to dismiss the indictment and thus all errors preserved on that record are deemed preserved on this appeal in the absence of a stipulation to the contrary.