OPINION OF THE COURT
Timothy J. Drury, J.
The defendants contend that their constitutional right to a fair and impartial jury trial is being violated by the manner in which jury panels are selected in Buffalo City Court and they challenge the jury panel pursuant to CPL 360.15. They claim that jury panels for trials in Buffalo City Court are drawn from residents of Erie County as a whole rather than from residents of the City of Buffalo, and that this fact violates their right to an impartial jury drawn from citizens residing in the district where the alleged crime was committed pursuant to Judiciary Law § 500. The People answer that the defendants have no right to jurors drawn from any particular district in which they reside and that the defendants are simply attempting to have their jurors drawn from a smaller subdivision than the one now used.
*361 Because the jurors are selected from a county-wide pool, the defendants also claim that blacks and Hispanics are seriously underrepresented injury panels and that, since one defendant is black and one Hispanic, their right to a jury drawn from a fair representation or cross section of the community is denied (see, Duren v Missouri, 439 US 357; People v Guzman, 60 NY2d 403, cert denied_US_, 104 S Ct 2155; People v Parks, 41 NY2d 36). The People reply that the jurors in the instant case are being picked randomly and according to State law and that any underrepresentation of minorities is inadvertent and secondary to an attempt to provide a centralized jury pool for the entire county.
Pursuant to the defendants’ motion, a hearing was held on November 29 and December 16,1983, and testimony was taken from Dr. John Slivka, a statistician, who testified on behalf of the defendants and Meryl F. King, the Erie County Commissioner of Jurors, who testified on behalf of the People.
Based on this testimony, the court finds that the following facts were established:
The Commissioner of Jurors of Erie County selects potential jurors randomly from the Erie County voter registration lists and lists of the licensed operators of and registered owners of motor vehicles in the county pursuant to Judiciary Law §§ 506, 507. These lists are checked to avoid any duplication. The Commissioner is directed by the rules of the Appellate Division, Fourth Department (22 NYCRR 1025.15), to provide, to the extent practicable, a central pool of trial jurors for all of Erie County. He does this for the Supreme and County Courts and also for Buffalo City Court pursuant to UCCA 2012. This makes good sense geographically in the case of Buffalo City Court because it is located across the street from the central jury pool and the Supreme and County Courts. The Commissioner, however, has decided that it is not practical to provide jurors from the central pool for any of the local courts in the towns, villages, or other cities in the county because of the distances involved (the nearest local court other than Buffalo City Court is Lackawanna City Court, which is about five miles away, and most local courts are considerably further) and because of the fact that most local courts have their sessions at night. The Commissioner sends these local courts’ jurors’ lists and they call their own jurors to court from their own subdivisions. Thus, only the City of Buffalo must use jurors drawn from the county-wide pool, and the Commissioner admits that this practice could be changed simply by pressing a button on his computer if it was *362 decided to provide the City of Buffalo with jurors drawn solely from Buffalo. The statistics presented on behalf of the defense by Dr. Slivka were not challenged and thus are deemed to be admitted by the People. Dr Slivka stated that blacks comprise 23% of the population of the City of Buffalo over the age of 18 but only 9% of Erie County (according to 1980 statistics). As a result, he states that blacks would be available 61% less frequently if county-wide juror pools are used than if pools comprised solely of Buffalonians are employed. Also, he states that statistically one can expect there to be 3 or as many as 4 blacks in a panel of 15 jurors chosen from city residents but only one black in a panel drawn from residents of the entire county. The statistics according to Slivka show a similar disproportion for Hispanics, indicating a 45% reduction in the frequency Hispanics would be available for jury service if the selection was from county residents as opposed to what it would be if the selection was from residents of the city alone.
In support of their first contention, the defendants cite Judiciary Law § 500 which states that all litigants shall have the right to trial by jurors “selected at random from a fair cross-section of the community in the county or other governmental subdivision wherein the court convenes” (emphasis added). The defendants argue that a fair reading of this section means that the jurors must be drawn from the City of Buffalo, especially since all the other local courts in the county draw their jurors only from their own particular governmental subdivisions. The Appellate Division, Fourth Department, in the recent case of People v Shedrick (104 AD2d 263 [1984]) has refused to interpret this section as requiring a county-wide jury pool when a county had divided itself into three different jury districts. The court in that case held that the jury selection system in question was in harmony with the purposes of Judiciary Law article 16, which is to promote a fair, efficient and economical system, and that article 16, enacted in 1977, did not abolish then existing jury systems like the one involved. There are no cases that have been brought to this court’s attention that have dealt with the question of whether a defendant has a right to have jurors drawn from the subdivision in which the court resides, although the lower court case of People v Chesler (91 Misc 2d 551 [Sup Ct, Monroe County 1977]) held in part that the “absence or under-representation of jurors from specific * * * subdivisions within the * * * jury commissioner’s jurisdiction * * * [was insufficient] cause to quash a jury panel or pool on constitutional grounds” (supra, p 557 [the case involved underrepresentation of Rochester City jurors in a county-wide pool]).
*363 The question then, using the analysis of People v Shedrick (supra), is whether the jury selection system used in Buffalo City Court is a fair, efficient, and economical system. Drawing jurors from a county-wide pool is certainly more efficient and economical but is it fair especially since it can only apply to the City of Buffalo and since the jury commissioner could, by a simple change in programming, also provide the city with juries made up only of Buffalo residents? This court disagrees with the judgment of the Commissioner of Jurors, but because of the constitutional principle of the separation of powers, will not substitute its judgment for his since his actions are reasonably related to the purposes of the Appellate Division Rules. “It is not the province of courts to interfere with the exercise of discretion conferred upon a public officer by law, unless it is arbitrary, capricious, unreasonable or illegal (Matter of Larkin Co. v. Schwab, 242 N. Y. 330)” (Matter of Sesto v Mielke, 28 Misc 2d 228, 230 [Sup Ct, Suffolk County 1961]). Moreover, People v Shedrick (supra) held also that article 16, enacted in 1977, did not abolish existing jury systems and it is the recollection of this court that the present jury system in question has been in place for some years prior to 1977, probably since 1942 when the Buffalo City Court Act was amended to allow the County Commissioner of Jurors to at least select civil jurors (§ 51).
The defendants also claim that they as minorities are underrepresented on the jury panel and that the panel is not drawn “from a group that is reasonably representative of a fair cross section of the community (Duren v Missouri, 439 US 357; People v Guzman, 60 NY2d 403, cert den_US_, 104 S Ct 2155; People v Parks, 41 NY2d 36)” (People v Shedrick, 104 AD2d 263, 272, supra).
“The Sixth and Fourteenth Amendments require that a jury be selected in an impartial manner from a group that is reasonably representative of the community. ‘[T]he deliberate exclusion of a particular community group or class of persons from jury service violates the constitutional right to a jury trial’ (People v Parks, supra, at p 42). In order to show that he has been deprived of due process of law, a defendant bears the burden of showing, prima facie, that a substantial and identifiable segment of the community was not included in the jury pool because the process used to select jurors systematically excluded that group from service (People v Guzman, supra).” (People v Shedrick, supra, pp 272-273.)
In the instant case, the proof has shown that blacks are called 61% less frequently in a county-based jury pool than if they were *364 drawn from a pool made up only of residents of the City of Buffalo, and Hispanics 41% less frequently. It could be argued that since this proportionate exclusion of blacks and Hispanics is due to the system by which jurors are selected and since blacks and Hispanics are a distinctive group or class of persons, that then the defendants have sustained their burden of making a prima facie showing of a due process violation (see, People v Shedrick, supra, p 273; see also, People v Waters, 123 Misc 2d 1057, 1067 [Suffolk County Ct 1984]). However, in the instant case, although the discriminatory effect may be the same, it is significant that blacks and Hispanics are not targeted as such for exclusion from the jury panel. Their relative exclusion occurs because they are represented in greater numbers in an urban setting and the City of Buffalo, the largest city in the county, has the only local court in the county of sufficient size to require it to operate during regular daytime hours and thus the only local court that is compatible with a central jury pool. Therefore, blacks and Hispanics are not excluded from the jury pool by reason of any discriminatory purpose (see, Duren v Missouri, 439 US 357 [1979], supra). Their exclusion is an inadvertent effect of an effort to set up, as far as practicable, a central jury pool for the entire county. The People therefore have satisfactorily demonstrated that the underrepresentation of blacks and Hispanics in the existing jury pool is unintentional and the unavoidable result of an attempt to achieve a legitimate State purpose (see, Duren v Missouri, supra, pp 368-369). Consequently, this court finds that there is no deliberate exclusion of blacks and Hispanics from the jury panels provided for trials in Buffalo City Court.
Accordingly, the defendants’ challenge to the jury panel pursuant to CPL 360.15 is denied.