Matter of A. Trenkmann Estate, Inc. v Tingling (2019 NY Slip Op 03923)





Matter of A. Trenkmann Estate, Inc. v Tingling


2019 NY Slip Op 03923


Decided on May 21, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 21, 2019

Richter, J.P., Manzanet-Daniels, Kahn, Gesmer, Oing, JJ.


9038 177/19 -730

[*1]In re A. Trenkmann Estate, Inc., Petitioner,
v
Hon. Milton A. Tingling, Jr., etc., et al., Respondents.


David A. Kaminsky & Associates, P.C., New York (Ron Kaplan of counsel), for petitioner.
John W. McConnell, New York (Shawn Kerby of counsel), for Hon. Milton A. Tingling, Jr., respondent.
Flaster & Willis, P.C., New York (Lori Willis of counsel), for Kenneth Swezey, respondent.



Application pursuant to Judiciary Law § 509(a) seeking an order directing the Commissioner of Jurors, New York County, to disclose the home and mailing addresses and dates of jury service of a particular individual, denied, and the petition dismissed, without costs.
Respondent Kenneth Swezey applied for Loft Law protection under the Multiple Dwelling Law in a building owned by petitioner and located at 407 Broome Street, New York, New York. To benefit from the protections of the Multiple Dwelling Law, Swezey had to demonstrate that the premises sought to be covered were occupied for residential purposes as a residence or home during the period commencing January 1, 2008 and ending December 31, 2009 (Multiple Dwelling Law § 281[5]). During the proceedings before the Office of Administrative Trials and Hearings (OATH), Swezey testified, on cross-examination by petitioner's counsel, that he resided at the premises from 2008 to 2009. He also testified that he served on two juries and that the jury summonses were mailed to the premises. Petitioner brought this original proceeding, pursuant to Judiciary Law § 509(a), seeking an order directing the Commissioner of Jurors for New York County to disclose Swezey's home and mailing addresses, as well as the dates of jury service listed in the records maintained by the Commissioner. Petitioner contends that the records maintained by the Commissioner are relevant to the OATH proceedings since Swezey testified to receiving the juror summonses at the premises for which he is seeking Loft Law protection. Petitioner also argues that Swezey's utilization of a Post Office box on his driver's license and vehicle registration casts doubt on Swezey's actual home address.
Judiciary Law § 509(a) requires that juror "questionnaires and records shall be considered confidential and shall not be disclosed except to the county jury board or as permitted by the appellate division." The purpose of the statute is to "provide a cloak of confidentiality for the information which the [juror] questionnaires contain" and to shield all information from disclosure in order to protect a juror's privacy interest and/or safety (Matter of Newsday, Inc. v Sise , 71 NY2d 146, 152 [1987], cert denied 486 US 1056 [1988]). This blanket rule bars an individual from seeking any juror records unless the individual "present[s] some factual predicate which would make it reasonably likely that the records would provide relevant evidence" (People v Guzman , 60 NY2d 403, 415 [1983], cert denied 466 US 951 [1984]).
Here, petitioner failed to provide the necessary factual predicate to obtain these confidential records. Petitioner's sole reason for requesting Swezey's juror records is to impeach his testimony at the OATH Proceeding. However, disclosure for the purpose of impairing someone's credibility has been expressly rejected by the Court of Appeals in People v Guzman . In Guzman , the defendant moved to dismiss the indictment because he believed that Hispanics were purposely underrepresented in the Grand Jury pool. The defendant requested the jurors' [*2]fingerprint cards and questionnaires so that he could effectively cross-examine the Commissioner of Jurors. The Court of Appeals rejected this argument because when the defendant made the request, "he gave no reason to believe that these records would turn up anything relevant other than to provide possible information with which to impeach the commissioner's credibility during the People's direct case" (Guzman , 60 NY2d at 415). Similarly, here, petitioner does not provide any evidence, nor does it point to any extraneous source, to suggest that Swezey did not live at the premises during 2008 and 2009.
Swezey also did not affirmatively introduce on his direct case the information about his jury service. Rather, it was petitioner, via his attorney, who asked Swezey if he was ever called to serve on a jury in New York State and if he remembered where he received the notice to appear for a jury. Swezey simply responded to the questions asked. Petitioner is seeking his juror records solely to unearth possible information to impair his credibility and merely speculates that the juror summons might indicate a different address. That was the exact situation that the Court of Appeals was confronted with in Guzman and we find no reason to depart from the holding in that case. Notwithstanding, petitioner's assertion that Swezey put his home address at issue is not a proper basis to grant disclosure because the fact "that some of the information sought may have been orally revealed during [Swezey's testimony], cannot alter the effect of Judiciary Law § 509(a) in categorically prohibiting the public disclosure of any records containing information obtained from the juror questionnaires" (Newsday , 71 NY2d at 153). Moreover, Swezey's listing of a Post Office box as the address on his driver's license and vehicle registration does not alter the result. It is not inconsistent with his position in this litigation because it simply indicates his mailing address, not where he resides.
The dissent contends that the privacy and safety concerns present in Newsday are not present here because the information sought would not pose a threat to Swezey's safety and privacy. However, Swezey had an expectation of privacy at the time he completed the questionnaire and had a right to rely on the fact that any information he provided would remain confidential. It bears emphasizing that "the Legislature exempted all information contained in the questionnaires regardless of its nature and the possible effect on privacy or safety interests which disclosure might cause" (Newsday , 71 NY2d at 152). The dissent also argues that there is a strong likelihood that prospective jurors are required to disclose their actual home address when summoned for jury service and cites Judiciary Law § 510(1) in support. However, the Commissioner of Jurors for New York County, who is in the best position to know the content of his office's records, stated in his affidavit that "jurors may utilize Post Office boxes as mailing addresses, or other addresses that are not a home address" on the questionnaires. Given the Commissioner's assertion, the dissent's argument is without merit.
The dissent's position would mean that civil litigants would open the door to frequent requests for jury records to use during cross-examination, or in any other manner, simply by asserting that the information they seek is relevant to some aspect of their case. Contrary to the dissent's argument, the situation here is not rare. Indeed, there are numerous cases where testimony about an individual's residence may be at issue. For example, a jury summons might be sought to challenge the credibility of a party's testimony that he or she did not live at the address where the process server alleges service was made, or in a case in which venue was contested. This would vitiate the legislature's intent in promulgating the statute, which is to
shield from disclosure all information maintained by the Commissioner of Jurors.
Accordingly, the application is denied and the petition dismissed.
All concur except Kahn, J. who dissents in a memorandum as follows:




KAHN, J. (dissenting)


Petitioner A. Trenkmann Estate, Inc. (Trenkmann) brings this original proceeding pursuant to Judiciary Law § 509(a) for disclosure of the records of respondent Commissioner of Jurors, New York County, as to the home and mailing addresses and dates of jury service of respondent Kenneth Swezey for purposes of an ongoing New York City Loft Board proceeding by the Office of Administrative Trials and Hearings (OATH proceedings) in which they are both [*3]involved. Based on the particular facts before us, I believe that the limited information sought should be disclosed to petitioner. Accordingly, I respectfully dissent.
The purpose of Judiciary Law § 509(a) is to "provide a cloak of confidentiality" for personal information about jurors and prospective jurors, including such "private details" as jurors' "spouses' names, the names and ages of their children, their home telephone numbers, occupations, educational backgrounds, and criminal records, if any — which the statute is designed to protect from public disclosure" (Matter of Newsday, Inc. v Sise , 71 NY2d 146, 152 [1987], cert denied 486 US 1056 [1988]).
Application of Judiciary Law § 509(a) and the case law thereunder mandates denial of applications for disclosure where the privacy and security interests of prospective jurors are of paramount concern, or where a need for disclosure of the confidential juror information based upon a reasonable likelihood of its relevance has not been shown. For example, in Newsday , the Court of Appeals affirmed the denial of disclosure to a newspaper of the names and home addresses of the jurors in a highly publicized murder trial, concluding that, in that case, the privacy and safety interests of the jurors outweighed the need for disclosure (see Newsday , 71 NY2d at 152). Similarly, in People v Guzman (60 NY2d 403 [1983], cert denied 466 US 951 [1984]), the Court of Appeals denied disclosure of jurors' fingerprint cards and qualification questionnaires, reasoning that the request for disclosure was based not upon any "factual predicate which would make it reasonably likely that the records would provide relevant evidence," but only upon mere conjecture. The Court of Appeals there found that the need for confidentiality outweighed the need for disclosure (Guzman , 60 NY2d at 415, citing People v Gissendanner , 48 NY2d 543, 550 [1979]).
Section 509(a), however, also authorizes this Court to permit disclosure of such confidential juror information, provided that, as the Court of Appeals has stated, "a proper showing" of need for such disclosure is made (Newsday , 71 NY2d at 152). An application for disclosure of juror information may be granted where the movant sufficiently establishes a factual predicate making it reasonably likely that the records sought would provide relevant evidence (see People v Janota , 547 NYS2d 610 [3d Dept 1989]). Thus, in enacting section 509(a), the legislature empowered this Court to permit disclosure of jury selection records under appropriate circumstances while endeavoring to prevent unwarranted, open-ended searches to root through confidential personal information.
In this case, Swezey is the petitioner in underlying OATH proceedings in which he seeks Loft Law coverage for the premises he claims was his residence in 2008 and 2009. In order for the premises to be qualified for such coverage as an "interim multiple dwelling," he is required to establish that he and at least two other residential tenants independently resided in the premises during the 2008-2009 window period set forth in Multiple Dwelling Law § 281(5). In the OATH proceedings, Swezey has testified to all of the information sought by Trenkmann, including his name, his home address in 2008 and 2009, and his jury service after 2008. Furthermore, Swezey testified that he received jury notices at 407 Broome Street, which was his home address as well as his mailing address. As the location of Swezey's residence in 2008 and 2009 is key to his claim that the premises in question qualify for Loft Law coverage, the disclosure of the information derived from his juror questionnaires and maintained by the Office of the Commissioner of Jurors, including his address and the dates of his jury service, would certainly be relevant to that issue. Therefore, in this case, Swezey's testimony sufficiently establishes that there is a factual predicate making it reasonably likely that disclosure of the information sought by Trenkmann would provide relevant evidence.
In the particular circumstances presented here, moreover, the privacy and safety concerns in Newsday are not present, as the information sought here would pose no threat to the safety or privacy concerns of Swezey or any other juror.
Although the majority correctly relies upon Newsday in stating that by enacting Judiciary Law § 509(a), the legislature protected the confidentiality of all jury questionnaire information, including information that would not affect jurors' privacy or safety concerns if disclosed (see Newsday , 71 NY2d at 152), the majority ignores that neither Judiciary Law § 509(a) nor Newsday imposes an absolute prohibition of disclosure of information derived from jury [*4]questionnaires. As the Newsday Court explained, "The Legislature has permitted an application for a court order, upon a proper showing, that particular information contained in the questionnaires should be made public," adding that "jurors' privacy and safety interests is a factor that the court must balance" (id. ). Here, where no privacy or safety concerns are present, Trenkmann has made a "proper showing" that disclosure of the particular limited information sought from Swezey's juror questionnaires is warranted.
Furthermore, in contrast to Guzman , no balancing of the need
for confidentiality against the need for disclosure under Gissendanner is required, because Swezey has already waived confidentiality and disclosed in his testimony the information sought by Trenkmann. Moreover, even if Gissendanner balancing were required, the circumstances of this case would certainly favor disclosure, as there are no confidentiality concerns present here.
The majority relies on a representation made in this case by the Commissioner of Jurors of New York County, who takes no position on Trenkmann's petition, that the information in the Commissioner's database may only reflect Swezey's mailing address or a post office box mailing address, and not necessarily his residential address. Although the precise information elicited by the questionnaire has not been provided to this Court, there is a strong likelihood that prospective jurors are required to disclose, when summoned for jury service, their actual residence address (see Judiciary Law § 510[1] ["In order to qualify as a juror a person must [be] . . . a resident of the county"; Rules of the Chief Administrator of the Courts [22 NYCRR] § 128.4 [defining "resident of a county or municipality" as "a person who maintains a fixed permanent and principal home within that county or municipality to which such person, wherever temporarily located, always intends to return"]), to assure their qualification for service in the county in which they are summoned. The slight possibility that the information sought by Trenkmann may not be dispositive of the OATH proceedings does not compel denial of the petition, as Swezey has testified that both his mailing and residence address were at the subject premises.
Relying on Guzman , the majority concludes that disclosure of Swezey's juror questionnaire information is barred because Trenkmann seeks it for the sole purpose of mere general impeachment of Swezey's credibility. In drawing that conclusion, the majority fails to consider the entirety of the standard governing disclosure of confidential records set forth in People v Gissendanner (48 NY2d 543 [1979], supra ), but instead seizes upon only one aspect of that standard as applied in Guzman . Under the Gissendanner standard, in order for a party to be entitled to disclosure of confidential records, that party must make a preliminary showing that the evidence sought "if known to the trier of fact, could very well affect the outcome of the [proceeding]" (Gissendanner , 48 NY2d at 548). Put otherwise, the evidence sought should "bear peculiar relevance to the circumstances of the . . . case" (id. at 549). Furthermore, in order to make the requisite preliminary showing, the party seeking disclosure need not "make a . . . showing that the record actually contains [relevant] information" (id. at 550). Rather, that party must "put[] forth in good faith . . . some factual predicate which would make it reasonably likely" that the records sought contain such information (id. ).
On the other hand, under the Gissendanner standard, "requests to examine records . . . motivated by nothing more than impeachment of [a witness'] general credibility" are treated as within the category of "extrinsic proof of matters collateral to the issues" at hand (Gissendanner , 48 NY2d at 548). Thus, confidential records must not be sought merely for the purpose of "general credibility impeachment" (id. at 550).
Here, the majority disregards the aspect of the Gissendanner standard pertaining to disclosure of evidence relevant to issues that could affect the outcome of the proceeding and considers only the "general credibility impeachment" aspect of the Gissendanner standard. The "general credibility impeachment" aspect of Gissendanner does not apply here, however, in that Trenkmann does not seek the juror questionnaire information at issue merely for impeachment purposes. Rather, Trenkmann's primary reason for seeking that information is that it could have peculiar relevance to the central issue in the OATH proceedings, namely, where Swezey resided during the 2008-2009 window period, and could very well affect the outcome of those proceedings. Moreover, for the reasons already discussed, Judiciary Law § 510(1) and 22 NYCRR 128.4 set forth a factual predicate making it reasonably likely that the juror [*5]questionnaire information sought by Trenkmann would reflect Swezey's actual residence address.
By contrast, in Guzman , the Court upheld the denial of the defendant's application for disclosure, as the defendant presented no factual predicate of reasonable likelihood, but only his mere conjecture, that the grand jury pool member fingerprint cards and questionnaire information he sought would contain information relevant to the central issue in that case, namely, whether the defendant's equal protection rights (US Const Amend XIV) were violated by an intentionally discriminatory systematic exclusion of Hispanics from the grand jury pool (see Guzman , 60 NY2d at 415).
Therefore, I would find that Trenkmann has made the requisite preliminary showing that it is entitled to disclosure of Swezey's juror questionnaire information.
The majority's concern that granting the instant petition would open the floodgates to frequent requests for jury records to be used during cross-examination is misplaced. The rare circumstances presented here, involving disclosure of evidence pertaining to the central issue of where Swezey resided during the 2008-2009 window period set forth in Multiple Dwelling Law § 281(5) and his right under the Loft Law to continued residence based on such evidence, is not likely to recur outside of situations such as the one presented here.
Accordingly, based upon the particular circumstances presented in this case, I would grant the petition and would direct the Office of the Commissioner of Jurors to disclose to Trenkmann any information maintained in its records regarding respondent Swezey's home and mailing addresses and dates of jury service during 2008 and 2009.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 21, 2019
DEPUTY CLERK