OPINION OF THE COURT
Joseph D. Valentino, J.
*368 FACTS
On July 24, 1995, the defendants were charged in the City of Rochester by a City Court information with the crime of criminal trespass in the third degree in violation of section 140.10 of the Penal Law. In general, the information charges each of the defendants with criminal trespass at the office of the Monroe County Department of Social Services located at 111 Westfall Road in the City of Rochester, County of Monroe. After ruling on various pretrial motions, the court scheduled this matter to be tried before a jury commencing on March 26, 1996. The Commissioner of Jurors assembled a jury panel for the trial on March 26, 1996.
By notice of motion dated March 26, 1996, defendants filed a motion pursuant to CPL 360.15 to challenge the jury panel from which the parties were to draw a jury for the trial of this matter. In essence, defendants alleged in their motion that the current system of impaneling jurors in the Rochester City Court results in a significant disproportionate underrepresentation of African-Americans, Hispanics, and individuals living at or below the poverty line. As such, these defendants claim that they are being denied their constitutional and statutory right to a jury selected from a fair cross-section of the community. The District Attorney filed a written opposition to the motion. Upon due consideration, the court directed that a hearing be conducted pursuant to CPL 360.15 to determine whether the jury panel should be struck.
At the commencement of the hearing which was conducted over the course of four days during the month of May 1996, the court requested counsel to address the following six issues in their questioning of witnesses, and in their memoranda to be submitted to the court at the conclusion of the hearing:
ISSUES
1. What is the applicable law?
2. How is the applicable law interpreted by the Monroe County Commissioner of Jurors?
3. How are jury panels drawn in Monroe County?
4. Does the law allow the utilization of city residents exclusively for City Court jury trials?
5. Are the defendants entitled to a jury drawn solely from City of Rochester residents?
6. Is there a compelling reason to use only City of Rochester residents for juries selected in Rochester City Court?
*369 At the hearing, the District Attorney elicited testimony from Gloria T. Zinone, Monroe County Commissioner of Jurors; Chester Mount, a supervisor with the Office of Jury and Data Services of the Office of Court Administration; and Merrill King, Erie County Commissioner of Jurors. The defendants called as witnesses the Honorable Charles L. Willis, Chief Administrative Judge for the Seventh Judicial District and Chairman of the Monroe County Jury Board; James E. Fan-tone, Chief Clerk of the Rochester City Court; Dr. John Klofas, Professor of Criminal Justice at the Rochester Institute of Technology; Dr. Ralph Sell, a demographer employed by the Center for Governmental Research; and trial attorneys David Murante, Thomas Cocuzzi, Thomas DeSimon, and Paul Richardson. In addition, a stipulation was entered into between prosecution and defense in regard to the jury selection process followed by the Broome County Commissioner of Jurors.
Upon review of the testimony and exhibits presented at the hearing, and consideration of the posthearing memoranda filed by the parties, the court makes the following findings of fact and conclusions of law:
1. Applicable Law
It is fundamental that a party is entitled to a jury drawn from a jury pool broadly representative of the community (see, Thiel v Southern Pac. Co., 328 US 217, 227 [1946]; Peters v Kiff, 407 US 493 [1972]). This fair cross-section requirement is basic to a trial by jury guaranteed by the Sixth Amendment (Taylor v Louisiana, 419 US 522, 530 [1975]), and is recognized as a policy of this State in section 500 of the Judiciary Law. Section 500 states, in pertinent part, that "It is the policy of this state that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the county or other governmental subdivision wherein the court convenes”.
Additionally, but only to the extent consistent with the above principles, the jury selection process in New York is governed by other provisions of article 16 of the Judiciary Law and part 128 of the Rules of the Chief Administrator of the Courts (22 NYCRR).
2. Monroe County Commissioner Zinone’s Interpretation of the Law
Commissioner Zinone, employed by the Office of the Commissioner of Jurors since 1979 and Commissioner of the Office *370 since 1989, utilizes a centralized jury system in summoning prospective jurors to serve on Rochester City Court juries. This centralized jury pool is comprised of qualified jurors drawn from all governmental subdivisions within Monroe County. In doing this, Commissioner Zinone is acting upon her interpretation of article 16 of the Judiciary Law, part 128 of the Rules of the Chief Administrator of the Courts (22 NYCRR), custom and practice of the office, and the advice of the Monroe County Jury Board and the Office of Court Administration. Commissioner Zinone believes that it is the policy set forth in the Judiciary Law that a jury pool for a Rochester City Court trial be randomly selected from a fair cross-section of the community, and that the term "community” for this purpose be defined as the County of Monroe. Finally, Commissioner Zinone is unaware of any law which prohibits the utilization of a "city only” pool for jury trials in Rochester City Courts.
3. Methodology of Selection of Jury Panels
Commissioner Zinone, as previously noted, is guided by the provisions set forth in article 16 of the Judiciary Law and part 128 of the Rules of the Chief Administrator of the Courts (22 NYCRR) in drawing a pool of prospective jurors for trials to be conducted in the City Courts of Rochester. In short, this process involves the mailing out of qualification questionnaires to individuals whose names appear on a source list. The source list is composed of names of individuals residing in Monroe County provided by various governmental agencies as set forth in section 506 of the Judiciary Law and section 128.3 of part 128 of the Rules of the Chief Administrator (22 NYCRR). Questionnaires, which are returned, are reviewed to determine if the individual meets the qualifications set forth in section 510 of the Judiciary Law to serve as a juror. If an individual meets the qualifications, his/her name is placed on a nonpermanent jury list which remains valid for 18 months. As the need arises for juries, names contained on the jury list are randomly selected by a computer and summonses are issued accordingly for those persons to appear for jury service. Clearly, for a variety of reasons, some individuals do not respond to the summons and others apply to be excused from service either temporarily or permanently. Typically, 26% of the individuals summoned to appear for jury duty for all courts within the Hall of Justice are residents of the City of Rochester.
4. The Law Permits a Rochester City Court Jury to be Comprised of City of Rochester Residents Exclusively
It is undisputed that neither article 16 of the Judiciary Law nor part 128 of the Rules of the Chief Administrator of the *371 Courts (22 NYCRR) prohibits the utilization of an all Rochester resident jury for jury trials in Rochester City Courts. In fact, section 500 of the Judiciary Law clearly authorizes the use of a localized jury in stating, alternatively, that a jury may be selected at random from a fair cross-section of the community in the governmental subdivision wherein the court convenes. The only limitation is that "no jury district * * * may be drawn consisting of less than the whole of the governmental subdivision wherein the court convenes.” (22 NYCRR 128.1.) No one contends that this rule precludes the use of a jury comprised of only Rochester residents.
5. Defendants are Entitled to a Jury Drawn Exclusively from City of Rochester Residents
Even though the applicable statute, rules, and decisional law all support the principle that a defendant has a constitutional right to a jury selected at random from a fair cross-section of the community, the term "community” strangely remains undefined. The court is, therefore, compelled to look at various factors in determining whether, for the purpose of this action, "community” shall be defined as the County of Monroe or the City of Rochester. As such, the court has considered the following factors:
(A) The authority of section 500 of the Judiciary Law;
(B) The City of Rochester is the principal community with an interest in this matter. The facts of the instant case establish the parameters for the community most affected by the alleged wrongdoing. The facts are: (1) the alleged acts for which defendants are being tried occurred within the City of Rochester, (2) the arresting agency was the Rochester City Police Department; (3) the court before which the defendants have been charged was elected solely by citizens of the City of Rochester and has subject matter jurisdiction of crimes committed within the confines of the City; (4) the City of Rochester is the only community which has a significant governmental interest in this matter;
(C) American Bar Association (ABA) Standards recommend that a jury must reflect the jurisdiction of the court. Standard 2 of the American Bar Association Standards Relating to Juror Use and Management (1993) provides further guidance to the court:
"(a) The names of potential jurors should be drawn from a jury source list compiled from one or more regularly maintained lists of persons residing in the court’s jurisdiction.
*372 "(b) The jury source list should be representative and should be inclusive of the adult population in the jurisdiction as is feasible.” (Emphasis added.)
The American Bar Association recognizes the necessity for jury pools to reflect the jurisdiction of the court. Significantly, the ABA Standards were presumed to be embraced by New York State in conjunction with the work performed by The Jury Project. Commissioner Zinone testified that, as a member of The Jury Project, she was familiar with the American Bar Association Standards and, in particular, Standard 2. She understood that the ABA Standards were to be presumed to be the appropriate standard to be used in New York State. Commissioner Zinone also testified that juror source lists should be consistent with the court’s jurisdiction and agreed that this standard was followed by The Jury Project.
In addition to acknowledging that ABA Standard 2 recommends residents for City Court juries, Mr. Mount also testified that there was no statutory mandate to use a central pool and, in fact, some County Commissioners of Jurors in New York State limit City Court juries to City residents. Judge Willis also made it clear that the "community,” for purposes of Rochester City Court, was defined by the geographical limits of the City of Rochester;
(D) Juries utilized in Town Courts having subject matter jurisdiction identical to Rochester City Court are drawn from the geographical jurisdiction of the town. Each Town Court in Monroe County is provided with a list of jurors by the Commissioner of Jurors that is drawn solely and exclusively from that particular town. The Commissioner of Jurors claims that such practice is required by UJCA 1306 and 2012 and by Rules of the Chief Administrator of the Courts (22 NYCRR) § 128.7. Rules of the Chief Administrator (22 NYCRR) § 128.7 provides, in part, as follows: "(a) The commissioner shall summon jurors to serve in these courts [Town and Village Courts], or if not practicable for the commissioner so to summon jurors, the commissioner shall furnish to each such court a list of qualified jurors who reside within the geographical jurisdiction of such court, or within such geographical area from which the court is authorized by law to summon jurors”.
The practice in Monroe County is for the Commissioner of Jurors to summon jurors for Town and Village Courts and not to provide a list. The Commissioner summons only residents of the particular town in which the court resides.
*373 The Chief Administrator and the Commissioner have decided that each town is the appropriate "community” from which to draw a fair cross-section of jurors. They have not applied a similar definition to Rochester City Court. Although there is no discernable difference in the jurisdiction between City and Town Courts, a different standard has been applied to jury selection for Rochester City Court. The more appropriate governmental subdivision and "community” in which these defendants should be tried is the City of Rochester by a jury drawn from that community. Residents of far-reaching towns in Monroe County such as Ogden, Brockport, Mendon, or any other town for that matter, located within the County of Monroe, have no particular vested interest in this matter, nor do town residents accurately reflect the actual "community” which is influenced by the events charged in the information before this court;
(E) The absence of any specific evidence of analysis or data presented at the hearing on the over-all impact of a "city only” jury pool on the jury pools available for trials in the superior courts; and
(F) The consensus of all witnesses that a "city only” jury pool would provide a more representative jury pool.
Considering these factors individually and collectively, this court finds compelling reasons to define the term "community” as the City of Rochester, and, therefore, does so in this matter.
The court must also determine if the method of drawing jurors for this trial to be conducted in the Rochester City Court provides the defendants with a jury pool which is consistent with the defendants’ constitutional and statutory right to a jury which is randomly selected from a fair cross-section of the community.
In People v Guzman (60 NY2d 403, 409 [1983], cert denied 466 US 951 [1984]), the Court of Appeals stated: "The due process clause of the Fourteenth Amendment protects a defendant from 'indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States’ (Peters v Kiff, 407 US 493, 502). Any person may challenge the exclusion of 'any distinct group’ from Grand Jury service because regardless of a person’s race, he or she 'has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and *374 thereby denies him due process of law’ (id., at p 504). '[T]he exclusion of a discernible class from jury service injures not only those defendants who belong to the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross section of the community’ {id., at p 500).” Additionally, the Court stated (at 410): "[i]n order to establish a violation of due process based on the absence of a fair cross section of the community in the jury pool, a defendant must demonstrate that a substantial and identifiable segment of the community was not included in the Grand Jury pool because the process used to select grand jurors 'systematically excluded’ that group from service.” (Citations omitted.)[1]
Through the affidavit of Dr. Ralph Sell, Director of Demography and Social Research at the Center for Governmental Research, and his testimony elicited at the hearing conducted in this matter, defendants presented evidence and statistical analysis of demographic data for the County of Monroe and the City of Rochester. Dr. Sell’s utilized data provided by the United States Bureau of the Census and other data maintained locally through the Center for Governmental Research as a basis for his testimony. According to Dr. Sell, the relevant demographic data is as follows:
COUNTY OF MONROE POPULATION
Number of Percentage of Classification Residents County Population
18 years old and over 537,965
African-American 52,311 9.7%
Hispanic 15,902 3.0% Poor 43,773 8.1%
*375 CITY OF ROCHESTER POPULATION
Number Percentage Percentage of County Population of of City Residing in the Classification Residents Population City of Rochester
18 years old and over 171,170 32%
African-American 44,238 25.8% 85%
Hispanic 11,630 6.8% 73% Poor 29,485 17.2% 67%
Extrapolating from this data, Dr. Sell stated that as a result of the current method of drawing a jury panel for a Rochester City Court trial from qualified residents of the County of Monroe, a cross-section of a randomly selected jury panel would be comprised of the following individuals:
85.5% White
9.7% African-American
3.0% Hispanic
8.1% at or below the poverty level
On the other hand, if the jury panel were to be drawn from residents of the City of Rochester alone, a fair cross-section of a randomly selected jury panel would be comprised of the following individuals:
65.3% White
25.8% African-American
6.8% Hispanic
17.2% at or below the poverty level
According to Dr. Sell, these percentages would translate in the following manner, and
African-Americans would be available for jury duty 2.7 times more frequently;
Hispanics would be available for jury duty 2.3 times more frequently;
Individuals at or below the poverty line would be available for jury duty 2.1 times more frequently.
Since the data and statistical analysis proffered by the defendants through the testimony of Dr. Sell was not disputed *376 by the District Attorney or the People’s witnesses in a significant manner, and the court finds such evidence to be credible and convincing, it is accepted by the court. Additionally, as the District Attorney has not challenged the characterization of African-Americans, Hispanics, and people living at or below the poverty line as a substantial and identifiable segment of the community, the court accepts this assertion as well.
Considering the above data can lead the court to no other conclusion but that the current system of a centralized jury pool of Monroe County residents employed by the Commissioner of Jurors for trials conducted in the Rochester City Court dramatically underrepresents the above-referenced groups. The process impairs the random selection of jurors from a fair cross-section of the community. The disparity in numbers indicates that a substantial and identifiable segment of the community has been excluded from this pool. This fact cannot be ignored by the court. Moreover, and of a convincing nature, is the largely unrefuted testimony of experienced trial attorneys in Rochester City Court whose experiences with jury compositions in all courts confirm the claimed underrepresentation. Defendants have thus established a prima facie case in challenging the present jury selection process.
6. Compelling Reasons Dictate the Use of a Jury Composed of Rochester Residents Only
In Duren v Missouri (439 US 357, 367 [1979]), the Supreme Court stated: " 'States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community’ Taylor, 419 U.S., at 538. However, we cautioned that '[t]he right to a proper jury cannot be overcome on merely rational grounds,’ id., at 534, Rather, it requires that a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process, such as exemption criteria, that result in the disproportionate exclusion of a distinctive group.” According to Duren, to overcome the right to a proper jury, a significant State interest must be manifestly and primarily advanced. It is not enough to merely assert rational reasons for the disproportionate exclusions of distinctive groups. This court finds that there was insufficient evidence presented at the hearing to demonstrate that there is a significant State interest in utilizing a centralized jury pool of Monroe County residents for Rochester City Court trials. Much of the justification for the use of the centralized jury system appears to be based upon a concern that a *377 "City of Rochester only jury” could result in a depletion of distinct minority groups available for superior court trials. However, there was no real evidence presented, other than by speculation, that such a depletion would indeed result. Equally unsupportive by any evidentiary data or studies is the concern that a "City of Rochester only jury” may result in a shortage of jurors for trials in Rochester City Courts. In this regard, it should be noted that recently nearly all the exemptions from jury service were eliminated by the New York State Legislature (Judiciary Law §§ 500, 509, 518, as amended eff Jan. 1, 1996, deleting reference to exemptions and or disqualifications as exceptions to the obligation of serving on juries and the repeal of §§512 [exemptions] and 515 [evidence of disqualification of exemption], eff Jan. 1, 1996).
In conclusion, this court finds no significant State interest manifestly or primarily advanced in using a centralized jury pool consisting of Monroe County residents for Rochester City Court trials; a process which results in a disproportionate exclusion of distinct groups. Therefore, upon analysis of the aforementioned case law and constitutional provisions, there are compelling reasons entitling defendants to a jury randomly selected from a fair cross-section of residents of the City of Rochester.
CONCLUSION
Having heard and determined all issues of fact and questions of law, defendants’ motion challenging the present jury panel is granted. This court, therefore, orders that the panel of jurors assembled by the Commissioner of Jurors for the trial to commence on March 26, 1996 be hereby discharged and another panel of prospective jurors is hereby ordered returned to the court.

. Even though the Court in Guzman (supra) was discussing a Grand Jury issue, it noted in footnote 3 that the same principles govern a petit jury selection. (60 NY2d, at 409-410.)