OPINION OF THE COURT
George B. Ceresia, Jr., J.
In this case, a prosecutor’s information charges the defendant with two counts of endangering the welfare of a child, in violation of Penal Law § 260.10 (1) and (2). This action was commenced by the filing of the prosecutor’s information with the Town of Hoosick Court. By order of removal entered October 24, 2001, the Supreme Court, County of Rensselaer, removed the action to itself, i.e., to its Integrated Part. The defendant moved to vacate removal of the above action from the Town of Hoosick Court to the Supreme Court, County of Rensselaer, Integrated Part. Defendant pursues the instant motion on the grounds that (1) such removal order deprives the defendant of her constitutional and statutory rights to a jury trial conducted before jurors selected at random from a fair cross-section of the community in the county where the court convenes, herein the Town of Hoosick, not the County of Rensselaer, and (2) the within removal order is not specifically authorized by CPL article 230.
The primary issue before the court is whether the Supreme Court, County of Rensselaer, Integrated Part may properly remove a local criminal matter to itself.
Defendant refers to article 230 of the Criminal Procedure Law in support of her position that there is no authority for the removal of this matter from the Town of Hoosick Court to the Integrated Part. Although article 230 is silent in this regard, the court finds that it does possess the authority to remove such matters as discussed below.
In embarking upon its review of the issue, the court must initially observe that Supreme Court is a court of original, unlimited and unqualified jurisdiction (see, Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718 [1997]). As provided in the New York Constitution, “[t]he supreme court shall have general original jurisdiction in law and equity” (NY Const, art VI, § 7; see also, Judiciary Law § 140-b). Thus, the Supreme Court has jurisdiction over the subject matter of this dispute. Commenting on “the immense jurisdictional power of the Supreme Court,” the appellate court in People v Darling (50 AD2d 1038 [3d Dept 1975]) held that:
*740 “As such, it is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed (Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166; Condon v Associated Hosp. Serv. of N. Y., 287 NY 411, 414-415) and any attempt by the Legislature to abridge, limit or qualify this broad jurisdiction of the Supreme Court is unconstitutional and void (Busch Jewelry Co. v United Retail Employees’ Union, 281 NY 150, 156; Matter of Malloy, 278 NY 429, 432; People ex rel. Swift v Luce, 204 NY 478, 487-488; Matter of Stilwell, 139 NY 337, 341; People ex rel. Mayor of City of N. Y. v Nichols, 79 NY 582, 589-590; Niagara Falls Power Co. v Halpin, 267 App Div 236, 241, affd 292 NY 705; Decker v Canzoneri, 256 App Div 68, 71-72). Not even the circumstance that another court has been given jurisdiction can deprive the Supreme Court of its general jurisdiction in law and equity (Barone v Aetna Life Ins. Co., 260 NY 410, 414).”
Subdivision (a) of NY Constitution, article VI, § 19 governs the removal of cases by Supreme Court:
“The supreme court may transfer any action or proceeding, except one over which it shall have exclusive jurisdiction which does not depend upon the monetary amount sought, to any other court having jurisdiction of the subject matter within the judicial department provided that such other court has jurisdiction over the classes of persons named as parties. As may be provided by law, the supreme court may transfer to itself any action or proceeding originated or pending in another court within the judicial department other than the court of claims upon a finding that such a transfer will promote the administration of justice” (emphasis supplied).
The second sentence thereof deals specifically with the removal of cases by Supreme Court to itself. The use of the phrase “as may be provided by law” raises the question of whether the power of removal is self-executing, without need for further legislative authority, or whether further legislation (for example, the adoption of provisions similar to CPLR 325 and 326) is necessary.
The Court of Appeals encountered a similar constitutional provision in the case of People v Carroll (3 NY2d 686 [1958]). The Carroll case specifically dealt with NY Constitution, article *741 I, § 2, and the right of a defendant to waive a jury trial in a criminal proceeding. The Court of Appeals in Carroll drew a comparison between the language providing for waiver of jury trials in criminal actions and similar language providing for waiver of a trial by jury in civil actions (see, NY Const, art I, § 2). It concluded that the former was self-executing, and did not require any further legislation. As pertinent here, the Court noted that NY Constitution, article I, § 2 recites as follows: “Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law” (emphasis supplied). In discussing the waiver in civil trials, the Court of Appeals reasoned (in dicta) that “[m]ost likely the total absence of specifics[1] indicated the delegation of power not to the public directly but merely to the Legislature * * * and its only effect was to remove the constitutional bar to the Legislature’s authority to enact a right to waive in civil cases” (id. at 690). For purposes of the instant discussion, it is significant that NY Constitution, article I, § 2 is unmistakable in its declaration that the only procedure for waiving a trial by jury in a civil action is “in the manner to be prescribed by law,” that is, through a further act of the Legislature.
By comparison, the prefacing phrase “as may be provided by law” appears to be much less restrictive in connotation. Such language can be construed as being merely an authorizing provision permitting the Legislature to adopt legislation in this area if it so chooses; but not otherwise restricting Supreme Court’s power to remove cases to itself if the Legislature should, for whatever reason, elect not to do so. This point becomes all the more significant when it is noted that in at least two instances, the New York Constitution employs the imperative “as shall be provided by law” (see, NY Const, art VI, § 22 [j]; art XV, § 3; but also see, art VII, § 3 [emphasis supplied]). In addition, in instances too numerous to mention, the Constitution utilizes the phrase “as provided by law.” The employment of these varying phrases in different contexts gives the court reason to believe that their use must be deemed *742 deliberate. The inference to be drawn is that whenever the Constitution is intended to make implementing legislative action a condition of a grant, it explicitly does so.
In this context, use of the phrase “as may be provided by law” appears to be supportive of a construction that legislative action is not necessary, and that the second sentence of NY Constitution, article VI, § 19 (a) is self-executing. Thus, in the court’s view, although the waiver of a trial by jury in a civil case under NY Constitution, article I, § 2 clearly requires implementing legislation (in order to adopt a procedure for such waiver “in the manner to be prescribed by law”), the removal by Supreme Court of a lower court case to itself does not. The court accordingly finds that under NY Constitution, article XVI, § 19 (a), Supreme Court has been granted the full authority to remove cases to itself, subject, however, to the regulatory power of the Legislature to adopt legislation governing the procedure for doing so, if it so chooses. The fact that CPL article 230 and CPLR 325 fail to mention the removal by Supreme Court of lower court cases to itself does not serve to restrict or impair its constitutional authority. Moreover, to the extent that there may be an ambiguity in the second sentence of NY Constitution, article XVI, § 19 (a), the court must follow the well established rule that “[i]n New York, constitutional provisions are presumptively self-executing” (Brown v State of New York, 89 NY2d 172, 186 [1996], citing People v Carroll, supra).
The court is aware of cases which apparently take a different point of view, the most conspicuous of which are People v Trabazo (180 Misc 2d 961 [Crim Ct, Queens County 1999]) and Matter of Dalliessi v Marbach (56 AD2d 858 [2d Dept 1977]). In Trabazo, the Criminal Court found that Supreme Court did not have the authority to transfer a criminal action pending in the local Criminal Court to Supreme Court, where a matrimonial action was then pending. In Matter of Dalliessi, the Court found that Supreme Court did not have authority to remove a County Court case to itself. The Court in Dalliessi reasoned that CPLR 325 does not authorize a removal on ground that the County Court calendar was congested. A distinguishing factor there, however, was the apparent fact that there was no order of transfer (see, id.). At least two other cases, however, have approved removal by Supreme Court of lower court cases to itself. In Blank v Meadow Park Clothes (57 Misc 2d 305 [1968]), the court approved removal of two related actions from New York City Civil Court to Supreme Court for joint trial of *743 the three actions. Similarly, in Schneider v Schneider (127 AD2d 491 [1st Dept 1987]) it was held that Supreme Court could properly consolidate a Family Court child abuse proceeding with a pending matrimonial action by reason of its concurrent jurisdiction (id. at 495).
Apart from the foregoing, there is, in the court’s view, an altogether different basis for upholding removal of this case. Notably, the Chief Judge of the Court of Appeals is imbued with the authority, as chief judicial officer of the Unified Court System, through the Chief Administrator, to supervise the administration and operation of the Unified Court System (see, NY Const, art VI, § 28 [a] [entitled “Administrative supervision of the courts”]). “[T]he constitutional grant of power to ‘supervise the administration and operation of the unified court system’ (NY Const, art VI, § 28, subd b) is not to be read in [a] hyperrestrictive manner” (see, Corkum v Bartlett, 46 NY2d 424, 430 [1979]). Under NY Constitution, article VI, § 30, entitled “Regulation of jurisdiction, practice and procedure of the courts,” it is stated:
“The legislature may, on such terms as it shall provide and subject to subsequent modification, delegate, in whole or in part, to a court, including the appellate division of the supreme court, or to the chief administrator of the courts, any power possessed by the legislature to regulate practice and procedure in the courts. The chief administrator of the courts shall exercise any such power delegated to him or her with the advice and consent of the administrative board of the courts.”
As stated in Judiciary Law § 211,
“1. The chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application to the unified court system throughout the state, including but not limited to standards and administrative policies relating to:
“(a) The dispatch of judicial business, the designation of administrative judges, hours of court, assignment of terms and judges, transfer of judges and causes among the courts of the unified court system, the assignment and reassignment of administrative functions performed by judicial and nonjudicial personnel, the need for additional judicial or nonjudicial personnel, and the publication of judicial opinions” (emphasis supplied).
*744 The Chief Administrator has been given the responsibility of supervising the administration and operation of the Unified Court System on behalf of the Chief Judge (see, NY Const, art VI, § 28 [b]). Pursuant to Administrative Delegation Number 1 the Chief Judge has delegated to the Chief Administrator the powers and duties to, inter alia, “establish regular hours, terms and parts of court and assign judges and justices to them” (see, 22 NYCRR 80.1 [b] [2]). In addition, under section 202.3 (c) (2) of the Uniform Rules for Trial Courts (22 NYCRR) the Chief Administrator may authorize the establishment in any court of special categories of actions and proceedings for assignment of judges specially assigned to hear such actions/proceedings. Under section 202.3 (c) (5) of the Uniform Rules for Trial Courts (22 NYCRR) the Chief Administrator may authorize the transfer of any action or proceeding and any matter relating to an action or proceeding from one judge to another in accordance with the needs of the court.
The Chief Judge, through the Chief Administrator, has adopted a policy for general application with respect to matrimonial actions and associated Family Court proceedings and criminal proceedings in Rensselaer County. In brief, the policy calls for removal of certain “matching” actions and/or proceedings from local criminal courts, Family Court and County Court to Supreme Court for purposes of disposition before a single justice. The foregoing policy was implemented by the Chief Administrative Judge of the Courts, Honorable Jonathan Lippman, in his Administrative Order of October 23, 2001 wherein it states that:
“Pursuant to the authority vested in me, and upon consultation with and agreement of Hon. Anthony V. Cardona, Presiding Justice of the Appellate Division, Third Department, I hereby establish in the Supreme Court, Rensselaer County, an Integrated Court Part which shall handle actions and proceedings commenced in Supreme Court together with actions and proceedings commenced in a Family or County Court or a local criminal court of Rensselaer County thereafter transferred to Supreme Court in accordance herewith; and I hereby assign, effective nunc pro tunc as of October 1, 2001, Hon. George B. Ceresia, Jr. to preside in such Part until further ordered, and authorize him, in discharge of such assignment and where he finds that it will promote *745 the administration of justice, to order the transfer to such Part of any cause: (i) commenced in Family Court; or (ii) commenced in County Court or a local criminal court where the defendant or the alleged victim to such cause either is or was a party to an action or proceeding in Supreme Court, Rensselaer County, or in Rensselaer County Family Court, or is or was a member of the same family or household of any such party; and I further authorize Hon. George B. Ceresia, Jr. to assign any cause in such Part to such Judges as may, from time to time, be assigned to such Part.”
The court finds that pursuant to the foregoing principles, the Administrative Order was implemented in reliance upon the Chief Administrative Judge’s constitutional power, as augmented by his delegated authority. The court further finds that in the instant matter the Supreme Court order of removal was issued in conformity with the policy of the Chief Judge and the Administrative Order of the Chief Administrative Judge in that pending Family Court neglect proceedings and criminal court proceedings involving the same parties were removed and joined before a single judge for final resolution.
The court concludes that removal of the above-captioned case to Supreme Court is proper (see, People v Gutierrez, 2001 NY Slip Op 40290[U] [Oct. 5, 2001]).
The court now considers defendant’s argument that she has been deprived of her constitutional and statutory right to a jury trial conducted before jurors selected at random from a fair cross-section of the community of the Town of Hoosick. In opposition, the People assert that (1) had the grand jury voted to keep defendant’s charges in County Court, an option available to the grand jury, the jury pool would have been selected from the entire county, not just the Town of Hoosick; (2) defendant proffers no basis to believe that defendant will not receive a fair trial if the matter is prosecuted outside the Town of Hoosick; and (3) defendant’s rights will not be abridged as she will be judged by a jury of her peers selected from a cross-section of the community in the county where the court convenes, namely, Rensselaer County.
Judiciary Law, article 16, § 500 provides that:
“It is the policy of this state that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community *746 in the county or other governmental subdivision wherein the court convenes; and that all eligible citizens shall have the opportunity to serve in grand and petit juries in the courts of this state, and shall have an obligation to serve when summoned for that purpose, unless excused.”
The underlying purpose of article 16 is “to promote a fair, efficient and economical jury selection system” (see, People v Shedrick, 104 AD2d 263, 272 [4th Dept 1984]). “The Sixth and Fourteenth Amendments require that a jury be selected in an impartial manner from a group that is reasonably representative of the community” (see, id. ).
Defendant argues that she has a right pursuant to the Sixth Amendment of the US Constitution and article I of the New York Constitution to “a jury drawn from the relevant community, here the Town of Hoosick, not the County of Rensselaer * * * “ (emphasis added). Defendant further argues that the Town of Hoosick is the relevant community because the charges arise out of alleged actions within the Town of Hoosick, and the charges were filed with the Town of Hoosick.
Defendant cites People v Miller (170 Misc 2d 367 [1996]) in support of her position. In Miller, the defendants were charged in the City of Rochester by a City Court information. Unlike the instant matter, however, in Miller the matter remained in City Court for trial, but the jury panel was selected from a county-wide pool rather than from a city-wide pool. In granting defendant’s motion challenging the county-wide jury pool, the court determined that there was “no significant State interest manifestly or primarily advanced in using a centralized jury pool consisting of Monroe County residents for Rochester City Court trials; a process which results in a disproportionate exclusion of distinct groups.” (Id. at 377.)
Although the instant charges arise out of actions allegedly occurring in the Town of Hoosick and were subsequently filed with the Town of Hoosick Court, the matter was removed to the Supreme Court, Integrated Part.[2] As previously discussed, the court finds that the removal of this action from the Town of Hoosick Court to the Supreme Court, Integrated Part was proper. A trial in this matter will therefore occur before the Supreme Court. The Supreme Court, County of Rensselaer, *747 while a state court, convenes in Rensselaer County and draws from a pool of eligible jurors, all of whom reside exclusively in Rensselaer County. Accordingly, a jury panel randomly selected from a county-wide pool represents a fair cross-section of the community in the county wherein the court will convene pursuant to Judiciary Law § 500. Furthermore, the Judiciary Law does not require that a jury panel be selected from the community wherein the information was filed, but rather from “the community in the county or other governmental subdivision wherein the court convenes” (see, Judiciary Law § 500). Finally, as posited by the People, defendant does not offer any proof to show that a jury panel randomly selected from a county-wide pool, rather than from the Town of Hoosick, would result in an unfair trial. The court finds that defendant’s constitutional and statutory rights to a jury trial conducted before jurors selected at random from a fair cross-section of the community wherein the court convenes are therefore preserved.
Since this matter is pending before the Supreme Court, the selection of a jury panel from a county-wide pool of eligible jurors does not violate defendant’s constitutional or statutory rights to a jury trial (see, Gutierrez, supra).
Accordingly, the defendant’s motion herein is in all respects denied.

. The Court of Appeals in referring to “specifics” was alluding to the requirement under NY Constitution, article I, § 2 that the waiver of a trial by jury in a criminal case must be “by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense.” NY Constitution, article I, § 2 does not include a parallel provision with respect to the procedure to be followed in order to waive a trial by jury in civil action.

. As noted by the People, even if the Town of Hoosick were deemed the relevant community, this would not have prevented the grand jury from opting to keep the charges in County Court resulting in the selection of a jury panel from a county-wide pool.