OPINION OF THE COURT
John J. Connell, J.
The headings and numbering in this decision correspond as nearly as possible to those of the motion papers. To the extent that some issues are duplicated or overlap, there are some variances in that procedure.
The defendant is charged with three counts of murder in the first degree under Penal Law § 125.27 (1) (a) (vii) and (xi). This court has denied the following defense applications for substantially the same reasons stated in People v Hale (173 Misc 2d 140): to apply heightened due process in death penalty cases; to strike the death penalty notice of intent on the grounds that the death penalty is unconstitutional facially and as applied; to dismiss on grounds that Penal Law § 125.27 (1) (a) (vii) is underinclusive; to reduce the indictment based on double-counting of the victims’ death; to declare CPL 320.10 unconstitutional under New York’s Constitution; and to preclude death qualification of the jury before the guilt phase.
C. Penal Law § 125.27 (1) (a) (vii) Unconstitutionally Vague and Overbroad Claim
The defendant seeks to dismiss or reduce count 10 of the indictment on the grounds that Penal Law § 125.27 (1) (a) (vii) is unconstitutionally vague and overbroad. The defendant argues that the term "in the course of * * * and in furtherance of’ has not been defined by the Court of Appeals, and has been given disparate definitions from lower courts. Therefore, this element under the statute is unconstitutionally vague and overbroad as a matter of Federal and State due process. The defendant further asserts that the element "commanded another person” has never been defined by any court in New York State, and that this provision lacks a standard for determining what conduct satisfies the "commander” element, *199 thereby making the statute unconstitutionally vague and over-broad. The defendant argues that due to this lack of clarity, the statute does not provide any way to distinguish those cases in which the death penalty may be imposed from those cases in which it may not.
 When the constitutionality of a statute is challenged on the ground of vagueness, typically that particular statute involves the 1st Amendment. Penal Law § 125.27 (1) (a) (vii) involves no 1st Amendment concerns. Therefore, the defendant lacks standing to claim that the statute is unconstitutionally vague on its face. The defendant can only claim that the statute is unconstitutionally vague as applied to his case (United States v Mazurie, 419 US 544, 550; People v Nelson, 69 NY2d 302, 308). Similarly, a statute can be challenged as being overbroad when a particular statute criminalizes speech (New York v Ferber, 458 US 747, 766; People v Hollman, 68 NY2d 202, 208). Penal Law § 125.27 (1) (a) (vii) clearly does not involve or affect speech, rather it affects conduct. Murder during the course of a felony is clearly conduct that is not protected under the 1st Amendment. Therefore, the defendant lacks standing to claim the statute is overbroad on its face and as applied to him.
It is well established that penal statutes are presumed to be valid, and a criminal defendant has a "heavy burden of demonstrating that a statute is unconstitutional” (People v Bright, 71 NY2d 376, 382). In order for a statute not to be struck down as unconstitutionally vague, "the statute must provide sufficient notice of what conduct is prohibited * * * [and does] not * * * permit or encourage arbitrary * * * [law] enforcement” (supra; People v First Meridian Planning Corp., 86 NY2d 608, 621-622; People v Nelson, 69 NY2d 302, 307, supra). However, this doctrine "recognizes that some forms of conduct which a State may validly make subject to penal sanctions cannot, and need not, be defined with precision” (People v Swartz, 130 AD2d 288, 290 [3d Dept 1987], lv denied 70 NY2d 960; United States v Petrillo, 332 US 1, 7-8). The defendant has failed to meet the burden of demonstrating that the statute is unconstitutionally vague and overbroad. The statute makes a crime to intentionally kill another individual in the course of and in furtherance of a felony. The statute puts the defendant on notice that this type of conduct is prohibited. To conclude otherwise would be absurd. Penal Law § 125.27 (1) (a) (vii) is "sufficiently definite by its terms so as 'to give a person of ordinary intelligence fair notice that his contemplated conduct *200 is forbidden by the statute’ ” (People v Bright, supra, at 382-383, quoting United States v Harriss, 347 US 612, 617).
Penal Law § 125.27 (1) (a) (vii) does not permit or encourage arbitrary law enforcement. The phrase "in the course of and in furtherance of’ limits the types of murders that may be prosecuted as first degree murders. The defendant can only be charged under this statute if he has committed an intentional murder "in the course of* * * and in furtherance of’ a felony. "[I]n the course of” has been interpreted to be a durational requirement under the statute, i.e., that the murder be committed during the commission of a felony (People v Lewis, 111 Misc 2d 682, 686; People v Wood, 8 NY2d 48). "[I]n furtherance of’ has been interpreted as placing "a relation requirement between the felony and the homicide” (People v Lewis, supra, at 686). The statute expressly sets forth the specific enumerated felonies during which the intentional murder was committed or attempted to be committed, in order for the defendant to be charged under this statute, thereby limiting the felonies that qualify for felony murder. The defendant’s conduct alleged in the indictment tracks the language in the statute. There is nothing to suggest that he is being charged arbitrarily. Furthermore, "New York law is clear that felony murder does not embrace any killing that is coincidental with the felony but instead is limited to those deaths caused by one of the felons in furtherance of their crime” (People v Hernandez, 82 NY2d 309, 317; People v Ryan, 263 NY 298).
The defendant also seeks to dismiss or reduce counts 3, 4, and 13 of the indictment, which charge the defendant with felony murder under Penal Law § 125.25 (3), on the grounds that this statute is unconstitutionally vague. Although no universal definition has been advanced by the Court of Appeals, or any lower courts, "in the course of and in furtherance of’ has been an element of the felony murder statute under Penal Law § 125.25 (3) for many years. Numerous cases involving felony murder have been affirmed and the constitutionality of the statute has been determined (People v Miller, 32 NY2d 157; People v Bornholdt, 33 NY2d 75, cert denied sub nom. Victory v New York, 416 US 905; People v Stokes, 88 NY2d 618; People v Britt, 212 AD2d 1034 [4th Dept 1995]; People v Howard, 241 AD2d 920). The statutory language of Penal Law § 125.27 (1) (a) (vii) is virtually identical to the language contained in Penal Law § 125.25 (3), and both statutes clearly encompass the felony murder doctrine. Since the Court of Appeals has not held this statute to be unconstitutional, and has affirmed *201 the language of section 125.25 (3) numerous times, it can be inferred that both section 125.27 (1) (a) (vii) and section 125.25 (3) are clear and not vague. What makes section 125.27 (1) (a) (vii) different from section 125.25 (3) is that the former requires that the defendant intentionally cause the death of another individual in the course of and in furtherance of a felony, while the latter does not require intentional conduct. The element of intent distinguishes those cases in which the death penalty may be imposed and those in which it may not.
The defendant also challenges the phrase "commanded another person” as being unconstitutionally vague. The defendant’s argument is unpersuasive. The term "command” has been used in the Penal Law for many years under section 20.00. This phrase, under Penal Law § 125.27 (1) (a) (vii), limits the application of accessorial liability to those situations where an individual commands another person to intentionally cause the death of another individual.
Here the commonsense meaning of "command” should be applied: "To direct, with authority. Power to dominate and control.” (Black’s Law Dictionary 267 [6th ed 1990].) The use of the phrase "commanded another person” under the statute is sufficient to put the defendant on notice that it is a crime to order another person to intentionally cause the death of Juan Rodriguez-Matos. This phrase also limits the type of conduct that can be charged under this statute by law enforcement personnel because of the limited application of accessorial liability.
Accordingly, the defendant’s motion to dismiss or reduce counts 3, 4, 10, and 13 of the indictment on the grounds that Penal Law § 125.27 (1) (a) (vii) and § 125.25 (3) are unconstitutionally vague and overbroad is denied.
E. Penal Law § 125.27 (1) (a) (vii) and (xi) Unconstitutional Because They Fail to Narrow the Class of People Eligible for the Death Penalty
Penal Law § 125.27 (1) (a) (vii) narrows the class of people eligible for the death penalty for the reasons discussed in sections A through D and section V (omitted for purposes of publication). The language is sufficiently specific to have placed the defendant on notice that the offenses with which he is charged are criminal, and the language is sufficient to limit law enforce *202 ment personnel from arbitrarily charging the defendant under this statute.
The defendant’s motion to dismiss or reduce count 10 of the indictment on the grounds that Penal Law § 125.27 (1) (a) (vii) fails to narrow the class of people eligible for the death penalty is denied. The defendant’s motion to dismiss or reduce count 10 of the indictment on the grounds that Penal Law § 125.27 (1) (a) (vii) is unconstitutional because it is irrationally under-inclusive, vague and overbroad, improperly double counts the victim’s death, and fails to narrow the class of people eligible for the death penalty is denied.
III. RETROACTIVITY
The defendant seeks dismissal of counts 11 and 12 of the indictment, which charge him with murder in the first degree in violation of Penal Law § 125.27 (1) (a) (xi). Pursuant to this section, a person is guilty of murder in the first degree when, with intent to cause the death of another person, he causes such death, and: "(xi) the defendant intentionally caused the death of two or more additional persons within the state in separate criminal transactions within a period of twenty-four months when committed in a similar fashion or pursuant to a common scheme or plan”.
Count 11 of the indictment alleges that the defendant intentionally caused the death of Juan Rodriguez-Matos on November 2, 1996, and in addition, intentionally caused the deaths of Peter Holley on September 22, 1995, and Joangel Toro on August 6, 1995, in a similar fashion within 24 months prior to Matos’ death. Count 12 of the indictment alleges the same facts as count 11, except this count charges the defendant with the death of Jovanny Diaz on August 6, 1995. The effective date of Penal Law § 125.27 (1) (a) (xi) was September 1, 1995.
The defendant seeks dismissal of counts 11 and 12 on the grounds that the People are improperly applying Penal Law § 125.27 (1) (a) (xi) retroactively. The defendant contends that by doing so, the People are charging him with murder in the first degree based partially upon acts that were allegedly committed prior to the effective date of the statute. The defendant argues he should only be prosecuted for the deaths of Joangel Toro and Jovanny Diaz based on the law as it existed prior to September 1, 1995.
A statute is determined to be retroactive when it "looks backward or contemplates the past * * * or * * * re¡ates back *203 to a previous transaction and gives it a different legal effect from that which it had under the law when it occurred” (Black’s Law Dictionary 1184 [5th ed 1979]). "Generally, statutes are construed as prospective, unless the language of the statute, either expressly or by necessary implication, requires that it be given a retroactive construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b], at 87.) However, the Court of Appeals has held that " '[a] statute is not retroactive * * * when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events’ ” (People v Weinberg, 83 NY2d 262, 265, quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [a], at 87).
The Legislature made the effective date of Penal Law § 125.27 (1) (a) (xi) September 1, 1995, and stated that "offenses committed prior to such date shall be governed by the provisions of law in effect at the time the offense was committed” (L 1995, ch 1, § 38). Therefore, it is clear the Legislature intended for this statute to be applied prospectively. It is equally clear that the People are applying the statute prospectively.
Penal Law § 125.27 (1) (a) (xi) requires proof of two additional killings as elements of first degree murder. Therefore, "a defendant cannot be deemed to have committed murder in the first degree until after he or she commits the third killing” (People v Shulman, 172 Misc 2d 535, 539 [Suffolk County Ct 1997]). The defendant did not allegedly commit first degree murder until November 2, 1996, when Juan Rodriguez-Matos’ death occurred, which was well after the date the statute became effective. The homicides of Joangel Toro and Jovanny Diaz, which occurred on August 6, 1995, were antecedent events that constitute aggravating factors or elements necessary to prove first degree murder. These homicides have not been given a different legal effect by this statute. Their legal effect is that they constitute charges for second degree murder reflected in counts 1 and 2 of the indictment, which is clearly the legal effect these acts possessed prior to the effective date of Penal Law § 125.27 (1) (a) (xi). The fact that these acts can be used as elements or antecedent events that occurred within 24 months prior to another intentional murder to prove first degree murder does not significantly alter their legal effect. The People are not seeking to enhance the defendant’s possible punishment if convicted for the deaths of Joangel Toro and Jovanny Diaz because the People have charged the defendant with second degree murder for each victim. Therefore, if the *204 defendant is convicted, he would only be subject to the punishment requisite to those charges.
This case is analogous to People v Weinberg (83 NY2d 262, supra), and its application is appropriate. In that case, the defendant was charged with "three misdemeanor counts of failure to file a tax return * * * and one class E felony count of repeated failure to file a tax return” under Tax Law § 1802. (Supra, at 265.) The defendant claimed that the Legislature did not intend for Tax Law § 1802 to be "applied retroactively to a repeated failure to file returns which occurred in part prior to the effective date of the statute.” (Supra.) The Court of Appeals rejected the defendant’s argument and held that the statute was "not being retroactively applied * * * in any true sense of the term” since the statute applied to future transactions which were " 'relate[d] to and are founded upon antecedent events’ ”. (Supra.) Furthermore, the Court determined that the defendant did not actually commit the section 1802 offense until he "failed to file his 1985 tax return by April 15, 1986, having then failed to file his returns for three consecutive years.” (Supra, at 266.)
In the case at bar, Penal Law § 125.27 (1) (a) (xi) applies to future transactions because the statute is clear that in order for the defendant to be charged with first degree murder, a third death, at a minimum, must occur after two or more deaths have occurred. Therefore, the future transaction would be the third death. The two or more earlier deaths that must occur are antecedent events which are elements of the first degree murder charge. The defendant can only be charged with first degree murder for this third death. Therefore, the defendant did not allegedly violate Penal Law § 125.27 (1) (a) (xi) until the third death (Juan Rodriguez-Matos) occurred on November 2, 1996.
Accordingly, that portion of the defendant’s motion seeking dismissal of counts 11 and 12 of the indictment on retroactivity grounds is denied.
IV. EX POST FACTO
The defendant seeks dismissal of counts 11 and 12 of the indictment on the grounds that these charges violate article I, § 10 of the United States Constitution, which prohibits States from enacting ex post facto laws.
Count 11 of the indictment charges the defendant with intentionally causing the deaths of Juan Rodriguez-Matos, Peter Holley, and Joangel Toro under Penal Law § 125.27 (1) (a) *205 (xi). Count 12 of the indictment is almost identical to count 11, except it charges the defendant with the death of Jovanny Diaz instead of Joangel Toro under Penal Law § 125.27 (1) (a) (xi).
The defendant argues that because counts 11 and 12 of the indictment contemplate past acts by including prestatute crimes as elements of the offense, the prosecution is seeking to inflict a greater punishment upon the defendant than was permitted by law at the time those crimes were allegedly committed, thereby violating the Ex Post Facto Clause of the United States Constitution.
In Collins v Youngblood (497 US 37), the United States Supreme Court held that the Ex Post Facto Clause prohibits any penal statute which " '[1] punishes as a crime an act previously committed, which was innocent when done * * * [2] makes more burdensome the punishment for a crime, after its commission, or * * * [3] deprives one charged with crime of any defense available according to law at the time when the act was committed’ ”. (Supra, at 42.) "[Statutes which permit the enhancement of punishment for a present crime based upon a prior crime, even where the prior crime occurred before enactment of the penalty-enhancing statute” are not encompassed in the above prohibitions (People v Shulman, 172 Misc 2d, at 538, supra; Gryger v Burke, 334 US 728; McDonald v Massachusetts, 180 US 311). Penal Law § 125.27 (1) (a) (xi) does not violate the Ex Post Facto Clause of the United States Constitution. This statute does not punish as a crime an act previously committed which was innocent when done since intentional murder has always been a crime. Neither does this statute make more burdensome the punishment for a crime after its commission since once a violation of the statute has been proven, the sentence options are mandated by the statute, and are not enhanced or retroactively applied after a determination of an individual’s guilt. The conduct for which a defendant is charged and convicted does not predate the effective date of the statute. Furthermore, this statute does not deprive an individual charged with a crime of a defense that was available at the time the offense was allegedly committed.
Penal Law § 125.27 (1) (a) (xi) enhances the punishment for the present crime of first degree murder based upon the prior two additional deaths, even though these deaths occurred before the enactment of this statute. Since there is no retroactive application of the statute being applied in this case, as previously discussed, the two additional deaths are antecedent *206 events which enhance the punishment for the capital murder charge (People v Weinberg, 83 NY2d 262, 266, supra). The defendant allegedly committed first degree murder on November 2,1996, at the time of the alleged third killing (Juan Rodriguez-Matos). He is also charged with second degree murder pursuant to Penal Law § 125.25 (1) in counts 1 and 2 of the indictment for the deaths of Joangel Toro and Jovanny Diaz. As such, the sentences that apply to each violation in the event of a conviction are the only ones that can be applied to each violation. Penal Law § 125.27 (1) (a) (xi) does not bestow upon the defendant an additional penalty for the two predicate deaths. A sentence under this statute is for a " 'stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one’ ” (People v Morse, 62 NY2d 205, 218, appeal dismissed sub nom. Vega v New York, 469 US 1186; People v Weinberg, 83 NY2d 262, 267; Gryger v Burke, 334 US 728, 732, supra).
New Jersey has also applied this reasoning when deciding ex post facto challenges to capital crime statutes. State v Erazo (126 NJ 112, 594 A2d 232 [1991]) involved an ex post facto challenge to the capital murder statute which permits a jury to consider a defendant’s prior murder conviction as an aggravating factor. The court held that " '[e]vidence of a prior murder is admissible under [the statute] not for the purpose of punishing defendant for that murder, but to enable the jury to determine the appropriate sentence for the present murder’ ” at the penalty phase of the trial (People v Shulman, supra, at 538, quoting State v Erazo, 126 NJ, at 134, 594 A2d, at 243). Penal Law § 125.27 (1) (a) (xi) requires proof of prior killings as elements of first degree murder at the guilt phase of the trial, thus there is still no ex post facto violation since both prior killings must also be proven.
Accordingly, that portion of the defendant’s motion seeking dismissal of counts 11 and 12 of the indictment on ex post facto grounds is denied.
VIII. MOTION TO DISMISS COUNT 10 OF THE INDICTMENT AS DUPLICITOUS
The defendant seeks an order to dismiss count 10 of the indictment as duplicitous since it charges him with the killing of Juan Rodriguez-Matos by shooting him with a gun and commanding another person to kill him. Count 10 charges the defendant with first degree murder pursuant to Penal Law § 125.27 (1) (a) (vii). The defendant contends that since he is be *207 ing charged as both a shooter and a commander, count 10 is duplicitous. The People have failed to specify in their bill of particulars whether they are pursuing a shooter or commander theory of prosecution; as a result, the defendant claims that he is prejudiced by this lack of notice, and unable to properly prepare a defense.
Pursuant to CPL 200.30 (1), each count of an indictment can only charge one offense (People v Palaguachi, 210 AD2d 436 [2d Dept 1994]). CPL 200.30 (2) provides that where a statute furnishes different ways of committing an offense under different subdivisions or paragraphs, a single count may only charge one offense pursuant to one paragraph or subdivision. An indictment must also contain " '[a] separate accusation or count addressed to each offense charged, if there be more than one’ and '[a] plain and concise factual statement in each count which * * * asserts facts supporting every element of the offense charged and the defendant’s * * * commission thereof with sufficient precision to clearly apprise the defendant * * * of the conduct which is the subject of the accusation’ ” (People v Keindl, 68 NY2d 410, 417, quoting CPL 200.50 [3], [7] [a]). A count which accuses a defendant of more than one offense is duplicitous.
Count 10 of the indictment charges the defendant with the crime of first degree murder for intentionally causing the death of Juan Rodriguez-Matos. The section of the law under which the defendant is charged is contained in one paragraph and one subdivision, and charges only a single offense, involving a single death. The facts alleged in this count only support one offense. Therefore, count 10 of the indictment does not violate the statutory requirements set forth under CPL 200.30 (1), (2) and 200.50 (3), (7) (a), and is not duplicitous.
The defendant’s claim that since he is being charged as both a shooter and a commander under count 10, the indictment is duplicitous, is without merit. The commander language contained in Penal Law § 125.27 (1) (a) (vii) limits the application of Penal Law § 20.00 to that particular subdivision of the death penalty statute. The language "commanded another person” is not an additional element to the offense of an intentional killing in the course of and in furtherance of a felony. Rather, under this statute, the People may charge the defendant as a principal, or in a limited situation, as an accomplice.
The People do not have to specify whether the defendant is the shooter or the commander under count 10 or in their bill *208 of particulars since the manner of prosecution is the same (People v Mains, 178 AD2d 960 [4th Dept 1991]). " 'For charging purposes, the distinction between principal and accomplice is academic’ ” (People v Rivera, 84 NY2d 766, 771, quoting People v Guidice, 83 NY2d 630, 637). This is because " '[t]here is no distinction between liability as a principal and criminal culpability as an accessory and the status for which the defendant is convicted has no bearing upon the theory of the prosecution’ ” (People v Rivera, supra, at 768, quoting People v Duncan, 46 NY2d 74, 79-80, cert denied 442 US 910). Count 10 of the indictment and the bill of particulars clearly set forth a single theory of prosecution, i.e., that the defendant intentionally caused the death of Juan Rodriguez-Matos in the course of and in furtherance of kidnapping in the first degree, or acting with the intent to cause the death of Juan Rodriguez-Matos, commanded another person to intentionally cause his death.
Accordingly, the defendant’s motion to dismiss count 10 of the indictment on the ground that it is duplicitous is denied.
IX. DISMISSAL OF THE INDICTMENT BECAUSE THE DEFECTIVE PROCESS AND RESULTING DUPLICITOUS INDICTMENT DEMONSTRATE IMPAIRMENT OF THE INTEGRITY OF THE GRAND JURY
The defendant seeks an order dismissing the indictment on the grounds that the Grand Jury presentation was defective since the grand jurors lacked proper guidance and constitutionally sound legal instructions when they reached their charging decision. The defendant claims that the Grand Jury proceedings were impaired since there is no guarantee that 12 grand jurors concurred when they voted on the first degree murder charges as to the defendant’s status as principal or accomplice.
Count 10 of the indictment charges the defendant with first degree murder pursuant to Penal Law § 125.27 (1) (a) (vii) as both a principal and as an accomplice. As stated in VIII (supra), "there is no legal distinction between liability as a principal or criminal culpability as an accomplice” (People v Rivera, supra, at 769). Therefore, at least 12 grand jurors had to concur that there was sufficient evidence to indict the defendant for the murder of Juan Rodriguez-Matos, and sufficient instruction as to the definition of "commanded another person” under Penal Law § 125.27 (1) (a) (vii). It is irrelevant whether some grand jurors voted to indict the defendant based upon his *209 actions as a principal or as commander since there is no legal distinction between the two.
The defendant further argues that the crimes charged in counts 11 and 12 cannot be committed in a "similar fashion” if the defendant acted as an accomplice in some of the crimes, but as a principal in others. This argument is without merit for similar reasons. There is no distinction between liability as a principal or culpability as an accomplice. Although the Grand Jury could have found that the defendant acted as both principal and accomplice, that fact does not make counts 11 and 12 duplicitous or impair the integrity of the Grand Jury. "[A]n indictment charging either that [the] defendant acted separately or jointly with others will sustain a conviction based upon evidence of his participation in the crime” (People v Gray, 187 AD2d 941 [4th Dept 1992]; People v Duncan, 46 NY2d 74, 79-80, cert denied 442 US 910, supra). "All that is required of an indictment is that it provide [the] defendant with fair notice of the charges against him. Such notice is given by an indictment which simply charges the defendant with a specified Penal Law violation whether the prosecution’s theory is that defendant is a principal or an abettor” (People v Floyd, 115 AD2d 248 [4th Dept 1985]; People v Liccione, 63 AD2d 305, 312-313 [4th Dept 1978], affd 50 NY2d 850).
Accordingly, the defendant’s motion to dismiss the indictment on the grounds that the process was defective and resulted in a duplicitous indictment, impairing the integrity of the Grand Jury, is denied.
XI. DISMISSAL OF THE INDICTMENT BECAUSE THE GRAND JURY WAS ILLEGALLY CONSTITUTED
The defendant seeks an order to dismiss the indictment pursuant to CPL 210.20 and 210.35 on the grounds that the Grand Jury was illegally constituted in violation of article I, §§ 1, 2, 3, 4, 5, 6, 11, 12, and 14 of the New York Constitution, and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, and Judiciary Law §§ 500-527. The defendant also requests that this court order the Monroe County Commissioner of Jurors, the Monroe County District Attorney, and the State Office of Court Administration to permit defense counsel access to any and all records and materials related to Grand Jury selection in Monroe County from 1977 to the present. The defendant claims that access to this information is essential to allow him to fully substantiate his claim that distinctive and cognizable minority groups are underrepresented in the pool *210 from which grand jurors are chosen, and that Grand Jury selection was otherwise illegally constituted. The defendant bases this claim specifically on the fair cross section requirement under the 6th Amendment and Equal Protection Clause of the 14th Amendment.
A. Fair Cross Section Requirement
The defendant claims that cognizable and distinctive groups have been excluded in the Monroe County Grand Jury pool, thereby violating the fair cross section requirement of the 6th Amendment.
The 6th Amendment requires that a jury be selected from a representative cross section of the community. (See, Taylor v Louisiana, 419 US 522 [1975].) In Duren v Missouri (439 US 357 [1979]), the Supreme Court instituted a three-part test for jury challenges. In order to establish a prima facie case for violation of the fair cross section requirement under the 6th Amendment, the defendant must show: "(1) that the group alleged to be excluded is a 'distinctive’ group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.” (Supra, at 364.)
In order to establish the first prong under the Duren test, the defendant claims that African-Americans, Hispanics, women, poor people, recent migrants to Monroe County, and young people are all distinct groups within the community, and that these groups are underrepresented in the creation of the Grand Jury pool in Monroe County. In People v Guzman (60 NY2d 403, cert denied 466 US 951), the Court of Appeals held that a group is distinctive if that group constitutes "a substantial and identifiable segment of the community” (supra, at 410). " 'To show that a group is distinct or cognizable under the [8]ixth [A]mendment, a defendant must show: (1) that the group is defined and limited by some factor * * * (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group’s interests cannot be adequately represented if the group is excluded from the jury selection process.’ ” (Willis v Kemp, 838 F2d 1510, 1514 [11th Cir 1988], cert denied sub nom. Willis v Zant, 489 US 1059; see also, Barber v Ponte, 772 F2d 982, 986 [1st Cir 1985], cert denied 475 US 1050.) In Peters v Kiff (407 *211 US 493, 503-504) the Supreme Court held that the exclusion of distinctive groups "deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented.”
 It has been established that African-Americans, Hispanics, and women do constitute distinct and cognizable groups within the community. (See, e.g., People v Guzman, 60 NY2d 403, cert denied 466 US 951, supra [Hispanics]; People v Parks, 41 NY2d 36 [women]; People v Hobson, 227 AD2d 643 [2d Dept 1996] [African-Americans].) However, young people grouped within an arbitrary age range do not constitute a distinctive group within the community because this group does not share similar specific characteristics. People in an age group which spans 11 years (18-29) have many different attitudes, experiences, and ideas that differentiate one individual within that age range from another. The fact that young people share a common age or age range is insufficient to establish young people as a distinctive group in the community, absent some other common similarity or interests shared by all young people. Furthermore, several courts have held that young people do not constitute a distinctive group within the community. (See, e.g., Willis v Kemp, supra; Brown v Harris, 666 F2d 782 [2d Cir 1981], cert denied 456 US 948; Ford v Seabold, 841 F2d 677 [6th Cir 1988], cert denied 488 US 928; People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., 173 Misc 2d 140, supra [edited for publication].)
Similarly, poor people do not constitute a distinct group within the community. Poor people are not defined and limited by some factor, i.e., race or sex, nor is there necessarily a common thread or basic similarity in attitudes, ideas, experiences, or a community of interests. The defendant has failed to demonstrate any of these elements. Economic status, like age, is a flexible status, which would not render poor people a distinct, cognizable group since membership in that group may shift from day to day. For a group to be distinct and cognizable the membership in that group cannot shift, or be arbitrarily selected or defined. (See, United States v Guzman, 337 F Supp 140, 143 [SD NY 1972], affd 468 F2d 1245 [2d Cir 1972], cert denied 410 US 937.) Furthermore, several courts have held that individuals who maintain a certain economic status do not constitute a distinct group. (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., 173 Misc 2d 140, supra [edited for publication] [poor people do not constitute a distinct class]; United States v Kleifgen, 557 F2d 1293, 1296 [9th Cir 1977] *212 [unemployed not considered a distinct group]; United States v Marcano, 508 F Supp 462, 469 [PR 1980] [persons of working class or lower socioeconomic status not a distinct group]; United States v McDaniels, 370 F Supp 298, 307 [ED La 1973], affd sub nom. United States v Goff, 509 F2d 825 [5th Cir 1975], cert denied 423 US 857 [finding that the poor, as defined by the United States Government poverty criteria, do not constitute a distinctive group].)
The defendant relies on People v Miller (170 Misc 2d 367 [Rochester City Ct 1996]), People v Prim (47 AD2d 409, mod 40 NY2d 946), and Thiel v Southern Pac. Co. (328 US 217) for the proposition that poor people constitute a distinctive group within the meaning of the New York and Federal Constitutions. The defendant’s application of these cases is incorrect. In Prim, the defendant challenged the entire jury panel for similar reasons. The Court ordered a hearing without deciding the merits of the appeal since the law which existed at the time of the defendant’s trial allowed women to be exempt from jury service. Taylor v Louisiana (419 US 522, supra) made such exemptions unconstitutional. The Court did not hold that poor people constitute a distinct group within the community. Miller and Thiel held that discrimination against individuals living below the poverty level in the manner in which jurors were selected was unjustified. Neither case held that poor people constitute a distinctive group within the community.
The defendant has failed to demonstrate that recent migrants to Monroe County constitute a distinct group within the community. He has brought forward no evidence to establish that this group is defined or limited by some factor, or that a common thread or similarity in attitudes and ideas exist among this group, or that there is a community of interests.
Clearly, young people, poor people, and recent migrants to Monroe County cannot be prohibited by the State from participating in the jury process. "However, a distinction must be made between 'mere statistical imbalances’ and true discrimination.” (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., slip opn, at 5, 173 Misc 2d 140, supra [edited for publication], quoting Barber v Ponte, 772 F2d 982, 1000, supra) " 'Unless one is prepared to say that there is an affirmative [constitutional] duty to produce a true cross-section on the venire for every imaginable group that exists in our complex society, something which no court has even come close to holding, we should avoid the overwhelming problems and the sterile solutions that will result from attempting to *213 subdivide a continuum of ages [and economic status] "into distinctive groups.” ’ ” (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., slip opn, at 5, 173 Misc 2d 140, supra [edited for publication].)
Since this court has found that African-Americans, Hispanics, and women are distinct and cognizable groups within the community, the second and third prongs of the Duren test must be analyzed only in regard to these groups.
The defendant claims that underrepresentation of African-Americans, Hispanics, and women is unfair and unreasonable in relation to the number of such persons in Monroe County. To prove this second prong of the Duren test, the defendant relies on statistics to demonstrate that the source lists used to formulate jury pools in Monroe County are underrepresentative of these distinct groups. In reviewing the statistical analysis supplied by the defendant, this court finds that these statistics are not persuasive to establish the second prong of the Duren test, or to warrant dismissal of the indictment.
The defendant has also failed to establish that African-Americans, Hispanics, and women are systematically excluded from the jury selection process. "Systematic exclusion means exclusion accomplished by a means ' " 'inherent in the particular jury selection process utilized’ ” ’ ”. (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., slip opn, at 6, 173 Misc 2d 140, supra [edited for publication], quoting People v Guzman, 60 NY2d, at 411, supra.) The exclusion of a distinctive and cognizable group "must have been caused by the process used to select the jury pool.” (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., slip opn, at 6, 173 Misc 2d 140, supra [edited for publication].) The jury pool in Monroe County is comprised of random and facially neutral lists of people who are registered to vote, pay taxes, have a driver’s license, and, since April of 1995, receive State unemployment benefits. The defendant claims that since members of a distinct group within the community are underrepresented on the source lists in proportion to their presence in the community, the use of these lists to comprise the jury pools constitutes systematic exclusion. This argument is unpersuasive. The behavior of members of these groups is unrelated and irrelevant to any State action, and does not prove that these groups are being systematically excluded. The fact that "some groups may not vote in the same numbers as others, or may not have as many licensed drivers as others, does not lead to the conclusion that the facially-neutral and random system used in [Monroe] County causes *214 systematic exclusion of those groups.” (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., slip opn, at 7, 173 Misc 2d 140, supra [edited for publication]; see also, People v Betancourt, 153 AD2d 750, 753-754 [2d Dept 1989]; People v Gregory ZZ., 134 AD2d 814, 815 [3d Dept 1987]; People v Cowan, 111 AD2d 343, 344 [2d Dept 1985].)
Clearly, a true cross section of the community is virtually unattainable since individuals do not serve on a jury for a wide variety of reasons, such as physical impairments, hearing impairments, and difficulty understanding the English language. The system is clearly open to all individuals, as long as the State does not prevent people from serving on a jury or discriminate against any individuals. (People v Hale, Sup Ct, Kings County, June 6, 1997, Tomei, J., 173 Misc 2d 140, supra [edited for publication]; Barber v Ponte, 772 F2d 982, 997 [1st Cir 1985], supra.) The process used to select grand jurors in Monroe County involves facially neutral and random selection from a variety of nondiscriminatory source lists. The process is designed to achieve a fair cross section of the community to the greatest extent possible, and does not discriminate against any distinctive and cognizable group within the community. Therefore, the defendant has failed to establish a prima facie violation of his right to a fair cross section under the 6th Amendment.
B. Equal Protection
The defendant also challenges the Grand Jury selection process on the grounds that the intentional discriminatory exclusion of distinct and cognizable groups from Grand Jury service violates his right to equal protection under the 5th and 14th Amendments. The People claim that the defendant is not a member of any distinct or cognizable group, and lacks standing to assert this claim.
Clearly, the defendant is a Hispanic male, and Hispanics have been identified as a distinct and cognizable group. Therefore, the defendant does have standing to assert this claim. However, the defendant’s claim is without merit.
In order to establish a prima facie violation of the right to equal protection, the defendant must establish that: (1) recognizable and distinct classes have been singled out for different treatment under the laws, as written and applied; (2) a substantial degree of underrepresentation of distinctive groups on Grand Juries has occurred over a significant period of time; and (3) the Grand Jury selection procedure is not racially *215 neutral and is susceptible to abuse. (Castaneda v Partida, 430 US 482, 494; People v Guzman, 60 NY2d 403, supra) As previously stated, the defendant has failed to establish that the Grand Jury selection process utilized in Monroe County is discriminatory or systematically excludes any distinct or cognizable groups. The selection process used in Monroe County is fair and reasonable and does not discriminate against any distinct groups. There is no evidence of substantial underrepresentation of a distinct and cognizable group over a significant period of time in Monroe County. The defendant has failed to satisfy the elements required in order to establish a prima facie violation of his right to equal protection.
Accordingly, the defendant’s motion to dismiss the indictment, and his request for records related to Grand Jury selection in Monroe County, as well as an evidentiary hearing, is denied in all respects.
MOTION TO DISMISS COUNTS 11 AND 12 OF THE INDICTMENT PURSUANT TO CPL ARTICLE 210 (AM-8)
MOTION TO DECLARE PENAL LAW § 125.27 (1) (a) (xi), THE "SERIAL KILLER” AGGRAVATING FACTOR, UNCONSTITUTIONAL, FACIALLY
AND AS APPLIED, AND TO PRECLUDE ITS APPLICATION AT BAR (AM-9)
The defendant seeks an order declaring Penal Law § 125.27 (1) (a) (xi), the "serial killer” aggravating factor, unconstitutional as applied in this case and on its face. The statute must be presumed constitutional and valid (Weems v United States, 217 US 349). The defendant shoulders the burden to prove beyond a reasonable doubt that it is not (People v Scalza, 76 NY2d 604). The relevant portion of this statute states that "the defendant intentionally caused the death of two or more additional persons within the state in separate criminal transactions within a period of twenty-four months when committed in a similar fashion or pursuant to a common scheme or plan”. (Penal Law § 125.27 [1] [a] [xi] [emphasis added].) The People have elected to proceed on the theory that the defendant acted in a similar fashion. It is the defendant’s position that similar fashion is unconstitutionally vague and overbroad under the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution; article I, §§ 1, 2, 3, 4, 5, 6, 11, 12 and 14 of the New York State Constitution; Civil Rights Law § 13; and Judiciary Law § 500.
Neither the death penalty legislation, nor the Penal Law, nor the Criminal Procedure Law, nor the Criminal Jury *216 Instructions, defines the term in a similar fashion. The defendant claims, therefore, that the phrase is standardless and fails to adequately inform a jury what they must find in order to determine if the People have established the necessary serial killer aggravating factor which narrows the class of persons eligible for the death penalty under this subdivision (Zant v Stephens, 462 US 862). Understandably, in instructing the Grand Jury, the prosecutor presented no definition of similar fashion or pursuant to a common scheme or plan.
Because of the lack of legislative definition of this term, reference to public pronouncements to determine legislative intent is helpful. According to the memorandum of the Assembly Codes Committee of March 6,1995 (at 1, 3), this subdivision was directed at "intentional murders that qualify under the statute” "[as] [sjerial [m]urders”. Governor Pataki described this section as applicable to serial murderers in his March 7, 1995 approval memorandum. Therefore, it appears clear that this subdivision reflects an executive and legislative intent to deal with serial murders.
The enactment draws a distinction between murders committed in a similar fashion and those committed pursuant to a common scheme or plan. This presumably is not a distinction without a difference. Analogous distinction has been drawn in law between modus operandi and common scheme or plan. Modus operandi refers to the method used in the commission of the crime. When crimes have a similar modus operandi, their method of commission is said to follow a repetitive pattern (People v Fiore, 34 NY2d 81, 87; People v Beam, 57 NY2d 241, 253). The determination of modus operandi depends on the totality of the circumstances and the degree of similarity in the method of commission. When a series of crimes are committed in a similar fashion, they have a similar modus operandi (Black’s Law Dictionary 1004 [6th ed 1990]). A pattern is a "reliable sample of traits, acts or other observable features” (Black’s Law Dictionary 1127 [6th ed 1990]). Similar means "[n]early corresponding; resembling in many respects; somewhat like; having a general likeness, although allowing for some degree of difference” (Black’s Law Dictionary 1383 [6th ed 1990]). "Similarity is not identity, but resemblance between different things” (United States v Raynor, 302 US 540, 547). In discussing the evidentiary standard for proof of other crimes, Wigmore calls the concept similarity a "flexible principle” and adds: "It is just this requirement of similarity which leaves so much room for difference of opinion, and accounts for the vari *217 anees of rulings in the different jurisdictions and even in the same jurisdiction and in cases of the same offense” (2 Wig-more, Evidence § 302, at 246 [Chadbourn rev ed 1979]).
The People maintain that similar "includes a spectrum of meanings between the poles of same and different” (answering affirmation, AM-9). The breadth of distance between same and different and the bewildering variances of rulings as described by Wigmore make it obvious that clear and objective standards providing specific and detailed guidance to a jury is questionable given the lack of clarity in this statute (Gregg v Georgia, 428 US 153; Proffitt v Florida, 428 US 242; Godfrey v Georgia, 446 US 420). Not lost on this court is the significant absence in the Practice Commentaries to Penal Law § 125.27 (1) (a) (xi) and the Criminal Jury Instructions of a recommended definition of similar fashion.
The People urge that the term similar fashion has a commonsense core of meaning (Jurek v Texas, 428 US 262) and is, therefore, easily understood by defendants and juries. The People also contend that the term serial killer does not require any more than a showing of a consecutive number of killings. Certainly the context in which the statute was debated and passed by the Legislature, signed into law by the Governor and promoted by those two branches of government was aimed at protecting the public from the Son of Sam, Ted Bundy and Arthur Shawcross-type serial killers. They are generally defined as persons who commit several homicides, separated in time and frequently in different geographic locations. Most are serial sexual killers who are compelled to exercise absolute control, both physical and mental, before inflicting torture, pain and ultimate death. The manner in which death is inflicted is frequently characterized by a ritualistic signature aspect, i.e., mutilation, cannibalism, sexual contact. Firearms are the least common weapons used by such serial killers. Finally, the crime scenes of the killers tend to be similar, using the same method of killing and similar crime scene arrangements (Blinder, Psychiatry in the Everyday Practice of Law [3d ed 1996 Cum Supp]).
In alleging that the four murders set forth in counts 11 and 12 were committed in a similar fashion, the People advance these similarities: all involved young men, shot with firearms to the left side of the head, on the west side of the City of Rochester, and in a cold-blooded fashion.
However, as the People also acknowledge, dissimilarities are important in analyzing the serial murder allegation: Victims: *218 One victim was a 16-year-old African-American male. Three were 19- to 20-year-old male Hispanics. Instrumentalities: A .45 caliber handgun, a .357 caliber handgun, a .25 caliber handgun and a 12-gauge shotgun. Motives: One contract shooting that began as a kneecapping and resulted in a homicide; one unplanned victim who was a companion of the contract shooting victim; one drive-by shooting as revenge for an earlier robbery committed by the victim and one shooting driven by the defendant’s desire to locate a former girlfriend. Defendant as Shooter: The defendant is alleged to be the shooter of the companion to the contract shooting victim and in the drive-by shooting. An unindicted accomplice is alleged to have shot the contract victim. The People are unsure if the defendant shot or commanded the shooting of the fourth victim. Wounds: One with shotgun wounds to the neck in the drive-by; one with multiple gunshot wounds to the head, abdomen, chest and neck; one with multiple gunshot wounds to the head, chest and hip; and one with a single shot to the head whose head thereafter was covered with a plastic bag. Location: Two on a public sidewalk during the same incident; one as he sat in a car on a public street and one in the defendant’s basement while handcuffed and blindfolded.
The People argue that the common element of death by gunshot makes these four homicides serial killings of a similar fashion. They ask this court to reject a Molineux standard (People v Molineux, 168 NY 264) in interpreting similar fashion and accept a spectrum of meanings between the poles of same and different.
The reliance of the People on People v Condon (26 NY2d 139) to support their position that similarity should not be confused with modus operandi is questionable. The Condon Court specifically noted that the signature-type crimes of a serial killer (i.e., Jack the Ripper) could establish such unique characteristics that proof of similar acts of the defendant would be probative of the fact that he committed the crime alleged.
There is nothing so unique, ritualistic, signature-like about these homicides that would support the Grand Jury’s decision to indict the defendant under this statute. Even the geographical similarities of the homicide locations proffered by the People are not obvious from a review of the Grand Jury minutes.
To accept the examples of similarity presented by the People, a person who shoots the requisite number of victims within the city limits during the prescribed period, thereby causing their *219 death, would fit the definition of a serial killer for purposes of this statute. Clearly, the Legislature did not intend such a result.
Under the facts of this case, viewed in the light most favorable to the People (People v Mikuszewski, 73 NY2d 407), the evidence before the Grand Jury was insufficient to establish the similar fashion element of the statute. In fact, the statute was read to the Grand Jury with no distinction made between similar fashion and common scheme or plan. The People, in their response to the defendant’s request for a bill of particulars, elected to proceed on the theory that the homicides were committed in a similar fashion.
Whether the Grand Jury voted to indict on similar fashion or common scheme or plan is, therefore, not clear from the Grand Jury minutes. The two concepts are quite different from each other as both sides agree. There was, however, insufficient evidence presented to support a theory of murder in the first degree under either theory.
Accordingly, the defendant’s motion to dismiss counts 11 and 12 as not being supported by legally sufficient evidence is in all respects granted.
While the vagueness of the law concerning similar fashion underscores "several difficult issues that remain to be resolved in its application” (When the Cheering Stopped: An Overview and Analysis of New York’s Death Penalty Legislation, 17 Pace L Rev 41, 85 [1996]), it does not appear to this court that this portion of the statute should be struck down on constitutional grounds by a trial level Judge (McKinney’s Cons Laws of NY, Book 1, Statutes § 150; People v Smith, 63 NY2d 41; People v Davis, 43 NY2d 17, cert denied 435 US 998; People v McIntosh, 173 Misc 2d 727 [Dutchess County Ct 1997]) at this point in the proceedings of this case.
Since this court is dismissing counts 11 and 12 on insufficiency of the Grand Jury minutes, this court need not reach the constitutional issues raised by the defendant in this and other motions nor the multiplicitous issues raised by the defendant in AM-7.
Pursuant to CPL article 210, various defense motions have been made to inspect the Grand Jury minutes and dismiss the indictment herein on grounds alleging insufficiency of evidence presented and legal instructions given, as well as other improprieties in the presentation of the case to the Grand Jury.
*220 The court has granted, the motion to inspect the Grand Jury minutes and has already ruled in this decision regarding counts 11 and 12. The remaining counts in the indictment were sufficiently supported by competent and admissible evidence. The legal instructions provided to the Grand Jury were proper. The remaining defense challenges to the manner of presentment are without merit.
Accordingly, except as hereinabove described, the defendant’s motion to dismiss the indictment is denied.
MOTION TO INVALIDATE THE BAR ON CHALLENGING AGGRAVATING FACTORS UNDER CPL 400.27 (3) (AM-10)
The defendant seeks an order declaring CPL 400.27 (3) unconstitutional on its face and as applied to this case and further requests an order striking the District Attorney’s notice of intent to seek the death penalty. He also seeks an order invalidating CPL 400.27 to the extent it bars the defense from challenging aggravating factors at a sentencing proceeding. The People oppose that application and claim the defendant’s motion is premature until such time as the sentencing of the defendant is at issue.
The language of the statute in question specifically prevents the District Attorney from introducing evidence about aggravating factors at the sentencing phase of the trial concerning aggravating factors it did not prove at the guilt phase of the trial. That limitation inures to the benefit of the defendant since it prevents the People, except in two specific circumstances, from introducing any evidence about additional aggravating factors. The People are, therefore, limited to presenting evidence to rebut mitigating evidence presented by the defendant.
Here, the defendant does not meet his burden to demonstrate the unconstitutionality of the statute beyond a reasonable doubt (Weems v United States, 217 US 349, supra; People v Bright, 71 NY2d 376, supra; People v Pagnotta, 25 NY2d 333). The New York sentencing provisions exceed the requirements of the New York and United States Constitutions. The provisions " 'genuinely narrow the class of persons eligible for the death penalty’ ” and reasonably justify the imposition of a death sentence in those appropriate cases (Lowenfield v Phelps, 484 US 231, 244; Zant v Stephens, 462 US 862, supra). Although this court feels the application of the defendant is ripe for decision at this point, this court feels the defendant has not established sufficient grounds to grant the application sought and, therefore, his motion in this regard is denied.
*221 COUNT 10 OF THE INDICTMENT SHOULD BE DISMISSED PURSUANT
TO GPL 210.25 (1) BECAUSE IT DOES NOT ASSERT FACTS INCLUDING EVERY ELEMENT OF THE OFFENSE CHARGED (AM-11)
The defendant seeks an order from this court dismissing count 10 of the indictment on the grounds that it is defective because it does not set forth sufficient factual allegations establishing how the defendant commanded the death of Juan Rodriquez-Matos. The defendant’s arguments in support of this application are without merit. The case law concerning indictments that track the language of a particular statute makes it clear that count 10 of the indictment is sufficient on its face (People v Ray, 71 NY2d 849; People v Cohen, 52 NY2d 584; People v Iannone, 45 NY2d 589).
Accordingly, the defendant’s application in this regard is in all respects denied.
MOTION TO DECLARE PENAL LAW § 125.27 (1) (a) (vii), THE "COMMANDER” FELONY-MURDER AGGRAVATING FACTOR, UNCONSTITUTIONAL, FACIALLY AND AS APPLIED, AND TO PRECLUDE ITS APPLICATION AT BAR (AM-12)
The defendant seeks an order from this court invalidating the commander portion of Penal Law § 125.27 (1) (a) (vii) as vague and overbroad under the 8th and 14th Amendments.
The defendant herein is charged as both the principal and under the commander liability theory for the death of Juan Rodriguez-Matos. The People contend that the defendant either shot Mr. Rodriguez-Matos himself or ordered another to shoot him.
As previously noted in this decision, the word command has a long history in New York jurisprudence. There is nothing to indicate that the Legislature intended to give a different meaning to that word than its ordinary meaning (People v Cruz, 48 NY2d 419). The defendant has not met his burden of proving beyond a reasonable doubt that the term command is unconstitutionally vague (People v Pagnotta, 25 NY2d 333, supra), and, therefore, his motion to declare the commander aggravating factor unconstitutionally vague is hereby denied.
MOTION TO CHALLENGE THE CONSTITUTIONALITY OF DEFENDANT’S ARREST AND TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE (AM-13)
This court has examined both search warrants and their applications that are the subject of this motion. The applications *222 for both warrants were sufficient to establish probable cause for the issuance of the warrant. Both prongs of the AguilarSpinelli test were satisfied. The basis of knowledge of Monica Szlekovics was grounded on her firsthand observations. Her admissions to Investigator Sheridan were not only corroborated by his knowledge of the nonpublic aspects of the investigation but also were statements made against her penal interest (People v Elwell, 50 NY2d 231; People v McCann, 85 NY2d 951). The claimed inconsistencies in Ms. Szlekovics’ statements do not justify this court holding hearings pursuant to Franks v Delaware (438 US 154) or People v Alfinito (16 NY2d 181). The defendant’s papers do not allege any facts supporting a conclusion that perjurious statements were contained in Investigator Sheridan’s search warrant application before the issuing Magistrate.
An examination of the "four corners” of the warrants in question and their applications demonstrate that the warrants were properly issued and the returns filed demonstrate that the items taken were properly taken under the warrants. The items objected to by the defense seized beyond the enumerated items in the warrant did constitute evidence of a crime seen in plain view by the executing officers, who were legally in a position to view those items during their search (Coolidge v New Hampshire, 403 US 443; United States v Truitt, 521 F2d 1174).
Accordingly, the defendant’s motion to suppress those items is in all respects denied.
MOTION FOR AN ORDER PROHIBITING IMPROPER AND UNDULY PREJUDICIAL JOINDER OF
UNRELATED OFFENSES PURSUANT TO CPL 200.20 (AM-16)
Counts 1 through 4 of the indictment herein deal with offenses which are alleged to have occurred on August 6, 1995. Count 5 deals with events of September 22, 1995. Counts 6 through 9 deal with events of October 11, 1996. Counts 10 through 14 deal with events of November 2, 1996. Finally, counts 15 through 22 deal with events of November 6, 1996. The defendant moves to sever each of these calendared events from the others so that a separate trial will occur for each count or series of counts as they apply to each day listed in the indictment. The People argue that the events of October 11, 1996, November 2, 1996 and November 6, 1996 are joinable under CPL 200.20 (2) (b). The court has ruled earlier in this opinion granting the motion of the defendant dismissing counts *223 11 and 12 of the indictment on the grounds that the evidence before the Grand Jury was insufficient to support those counts. In order for this court to find that the events of August 6, 1995 and September 22, 1995 are joinable with each other and with the later events of October 11, 1996, November 2, 1996 and November 6, 1996, the "serial killer” aspect of Penal Law § 125.27 would have to apply. Since the court has ruled that there was insufficient evidence before the Grand Jury on this issue, the only basis for joining the events of August 6, 1995 and September 22, 1995 with those of October 11, 1996, November 2, 1996 and November 6, 1996 would be CPL 200.20 (3). The court finds no such basis and orders that counts 1 through 5 of the indictment be severed and tried separately from the remaining counts of the indictment. Counts 6 through 10 and 13 through 22 shall not be severed and shall be tried jointly on the grounds that they are properly joined under CPL 200.20 (2) (b).
BILL OF PARTICULARS RESPONSE (AM-17)
In crafting the death penalty law, the Legislature declined to change the discovery and bill of particulars provisions of the Criminal Procedure Law. The People, in their response to the defense request for expanded bill of particulars information, rely on the obligations as delineated by CPL 200.95. This court’s review of the People’s response supports their position.
Accordingly the defendant’s motion to compel a further response to the request for a bill of particulars is hereby denied.
The People also indicate in their response that they will continue their ongoing duty to supply Brady material as, and if, it comes into their possession.
MOTION CHALLENGING INSTRUCTION ON SENTENCING CONSEQUENCES OF JURY DEADLOCK PURSUANT TO CPL 400.27 (10) (AM-22)
The defendant seeks an order declaring CPL 400.27 (10) unconstitutional to the extent that it requires the court to instruct the capital sentencing jury that the defendant will receive a sentence with a minimum term of between 20 to 25 years and a maximum term of life if the jury fails to unanimously agree on a penalty phase verdict.
CPL 400.27 (10) provides, in pertinent part, that the court "must instruct the jury that with respect to each count of mur *224 der in the first degree the jury should consider whether or not a sentence of death should be imposed and whether or not a sentence of life imprisonment without parole should be imposed, and that the jury must be unanimous with respect to either sentence”. The same section goes on to provide that in the event that the jury cannot reach a unanimous agreement as to whether the defendant should be sentenced to death or life imprisonment without parole, that the court will "sentence the defendant to a term of imprisonment with a minimum term of between twenty and twenty-five years and a maximum term of life.”
The defendant argues that the instruction by the court that their failure to act unanimously could result in the defendant’s ultimate release from prison will have a coercive effect on the jury and result in a more likely verdict of death, thus depriving the defendant of his constitutional protections guaranteed in the 8th and 14th Amendments of the United States Constitution.
The instruction contemplated in CPL 400.27 (10) is similar to that required in the State of New Jersey (NJ Stat Annot § 2C:ll-3 [f]). This section of the New Jersey death penalty statute has been constitutionally examined by the New Jersey Supreme Court under both the United States Constitution and the Constitution of the State of New Jersey and no violation of either Constitution was found (State v Brown, 138 NJ 481, 651 A2d 19 [1994]; State v Ramseur, 106 NJ 123, 524 A2d 188 [1987]). This court agrees with the analysis of the New Jersey appellate courts in this regard.
Accordingly, the defendant’s motion on this issue is denied.
MOTION CHALLENGING CPL 400.27 (14) AND 240.45 (2) (a) (AM-23)
CPL 400.27 (14) (a) (ii) incorporates the commonly known "reverse” Rosario discovery provision into the sentencing proceeding in a death eligible case. The defendant argues that such incorporation unduly restricts the ability to present a complete and thorough defense and will have an unconstitutional chilling effect on his sentencing phase strategy and presentation. Such claim is without merit. The "reverse” Rosario rule does not violate constitutional rights (People v Copicotto, 50 NY2d 222; see also, Williams v Florida, 399 US 78 [where Florida’s requirement that the defendant disclose the names of alibi witnesses was upheld]).
Accordingly, the defendant’s motion in this regard is denied.
*225 MOTION CHALLENGING BURDEN OF PROOF IMPOSED UPON DEFENDANT PURSUANT TO CPL 400.27 (6) (AM-24)
MOTION CHALLENGING APPLICATION OF RULES OF EVIDENCE, PURSUANT TO
CPL 400.27 (6), TO DEFENDANT’S RIGHT TO PRESENT MITIGATING EVIDENCE (AM-25)
CPL 400.27 (6) provides that the burden of establishing mitigating factors is on the defendant and must be proven by a preponderance of the evidence. The section further provides that the rules of evidence shall apply to the defendant’s presentation of evidence regarding mitigating factors set forth in subdivision (9) of CPL 400.27, and allows for the admission of reliable hearsay.
The defendant maintains that requiring him to prove his mitigating factors by a preponderance of the evidence increases the likelihood of an erroneous application of the death penalty. He argues that application of the "by a preponderance of the evidence” standard would lead to the preclusion of relevant mitigating evidence that could tip the scales in favor of a sentence of life without parole, citing Ed-dings v Oklahoma (455 US 104). The United States Supreme Court has specifically considered the question of a defendant bearing that burden of proof at the sentencing phase of a capital murder case and has upheld the constitutionality of such a sentencing scheme (Walton v Arizona, 497 US 639).
The defendant’s argument is that the rigid application of the rules of evidence or the insistence upon "reliable hearsay” will deprive the defendant of his State and Federal constitutional rights to due process. This argument is without merit. The rules of evidence are intended to insure that reliable and relevant information is introduced in a legal proceeding and the Supreme Court of the United States has consistently held that evidence presented during the sentencing phase be both relevant and reliable (Green v Georgia, 442 US 95; Chambers v Mississippi, 410 US 284).
Accordingly, the defendant’s motions on these issues are denied.
*226 MOTION CHALLENGING VAGUE AND STANDARDLESS SECOND-STEP SENTENCING DETERMINATION AND INSTRUCTION THAT JURORS MAY CONSIDER MITIGATING FACTOR PURSUANT TO CPL 400.27 (11) (AM-26)
CPL 400.27 (11) (a) provides that the sentencing jury must first weigh aggravating and mitigating circumstances and then reach a unanimous decision as to whether death is an appropriate punishment. The defendant argues that this particular language provides no guidance to the jury and is thus unconstitutionally vague and would lead to a substantial risk that the death penalty would be imposed in an arbitrary and capricious manner.
It is the burden of the State to insure that the process involved in sentencing is structured so as to guard against bias or caprice in sentencing (Tuilaepa v California, 512 US 967). As part of the sentencing formula, the jury is instructed that their decision must be unanimous (CPL 400.27 [10]). The jury can then only impose a sentence of death if it unanimously finds beyond a reasonable doubt that aggravating factors substantially outweigh mitigating factors established by the defendant by a fair preponderance of the evidence (CPL 400.27 [11]). Thus, the Legislature has insured that once a defendant falls within a class of persons eligible for the death penalty, its procedure for arriving at such a decision is not meted out in an arbitrary or capricious manner (California v Ramos, 463 US 992).
Accordingly, the defendant’s motion on this issue is denied.